SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| STATE OF ARIZONA, | ) | Arizona Supreme Court |
| | ) | No. CV-00-0365-PR |
| Petitioner, | ) | |
| | ) | Court of Appeals |
| v. | ) | Division One |
| | ) | No. 1 CA-SA 00-0054 |
| THE HONORABLE MICHAEL O. | ) | |
| WILKINSON, Judge of the SUPERIOR | ) | Maricopa County Superior |
| COURT OF THE STATE OF ARIZONA, | ) | Court |
| in and for the COUNTY of | ) | No. LC 1999-000438 |
| MARICOPA, | ) | |
| | ) | Phoenix Municipal Court |
| Respondent Judge, | ) | Nos. 8707011-12-1C |
| | ) | and  8705327-1C |
| JOHN R. PORTER, | ) | |
| | ) | |
| Real Party in Interest. | ) | **O P I N I O N** |
| | ) | |
| | ) | |
| _____ | ) | |

Appeal from the City of Phoenix Municipal Court
The Honorable Richard A. Garcia
Nos. 8707011-12-1C and 8705327-1C
AFFIRMED IN PART; REVERSED IN PART; REMANDED

_____

Special Action from the Superior Court of Arizona
in Maricopa County
The Honorable Michael O. Wilkinson, Judge
VACATED

_____

Opinion of the Court of Appeals
Division One
198 Ariz. 376, 10 P.3d 634 (2000)
VACATED

_____

Peter A. Van Haren, Phoenix City Attorney                    Phoenix
     By   Bianca E. Bentzin, Assistant City Prosecutor
Attorneys for State of Arizona

Hurley & Mahowald                                          Phoenix
     By   Michael E. Hurley
     and  Michael James Wicks
Attorneys for John R. Porter

Janet Napolitano, Attorney General                        Phoenix
     By   Randall M. Howe, Chief Counsel
          Criminal Appeals Section
     and  Diane Leigh Hunt, Assistant Attorney General    Tucson
Attorneys for Amicus Curiae State of Arizona

Richard M. Romley                                          Phoenix
Maricopa County Attorney
     By   Diane Gunnels Rowley, Deputy County Attorney
Attorneys for Amicus Curiae Maricopa County
_____

M c G R E G O R, Vice Chief Justice

¶1      We granted review to consider whether and to what extent the courts can order restitution for victims of an unlicensed contractor who performs incomplete and faulty work. We conclude that a trial court may award restitution when and to the extent that the criminal act of contracting without a license directly causes a victim's economic loss.

**I.**

¶2      John R. Porter, representing himself to be a licensed contractor, separately contracted with T.S. and N.L. (the victims) to perform remodeling work on their homes. T.S. purchased needed materials and paid Porter $2,854.77. N.L. paid Porter at least $9,040.27. In both instances, Porter failed to complete the work and did some of the work improperly. The victims each filed a complaint with the Registrar of Contractors, alleging both poor

2

workmanship and non-performance. The Registrar of Contractors'
investigation revealed that Porter did not hold a valid
contractor's license.

¶3     Porter was charged and convicted in Phoenix Municipal
Court of two counts of acting in the capacity of a contractor
without holding a contractor's license, a class one misdemeanor.[1]
Arizona Revised Statutes (A.R.S.) §§ 32-1151, 32-1164.    The
municipal judge conducted a restitution hearing pursuant to A.R.S.
section 13-603, and ordered Porter to pay $22,429.11 to T.S. and
$22,365.67 to N.L.   The judge calculated these awards by adding the
amounts each victim had paid to Porter to the estimated cost of
repairing Porter's faulty work and finishing work he left
incomplete.

¶4     Porter appealed the restitution order to the Maricopa
County Superior Court.   Judge Wilkinson vacated the restitution
awards, stating that the victims' economic losses were caused not
by Porter's failure to procure a contractor's license, but by
"shoddy and incomplete work." *State v. Porter*, No. LC 1999-000438,
Minute Entry Order at 2 (Dec. 4, 1999).   Having no further right to
appeal, the State filed a special action in the court of appeals.
The court of appeals accepted jurisdiction but denied relief,

---

[1]     The court also convicted Porter of one count of
advertising to provide contracting services without first obtaining
a contractor's license.  Ariz. Rev. Stat. (A.R.S.) § 32-1165.  The
trial judge did not base any restitution award on this conviction.

3

holding that the economic loss the victims suffered was a "remote, indirect, or consequential result" of Porter's crime, and therefore beyond the scope of criminal restitution. *State v. Wilkinson*, 198 Ariz. 376, 381 ¶ 22, 10 P.3d, 634, 639 ¶ 22 (App. 2000).

**¶5** We granted review to determine whether a victim can recover restitution from a person convicted of contracting without a license in violation of A.R.S. section 32-1151.[2] At the Court's request, the parties separately argued the question whether Arizona's restitution statutes are consistent with the Arizona Constitution's guarantee of the right to a civil jury trial.

## II.

### A.

**¶6** To implement the important constitutional right of crime victims to recover prompt restitution,[3] the legislature enacted several statutes that define the circumstances under which and the extent to which a court may award restitution. Section 13-603 directs the court to "require the convicted person to make restitution" to the victim, "*in the full amount of the economic loss* as determined by the court . . . ." A.R.S. § 13-603.C (emphasis added). Economic loss includes

---

[2] We exercise jurisdiction pursuant to **Arizona Constitution** Article VI, Section 5.3 and Arizona Rules of Procedure for Special Actions section 8(b).

[3] Ariz. Const. art. II, § 2.1.A.8.

4

> *any loss incurred* by a person *as a result of the commission of an offense.* Economic loss includes lost interest, lost earnings and other losses which would not have been incurred *but for* the offense. Economic loss *does not include* losses incurred by the convicted person, damages for pain and suffering, punitive damages or *consequential damages.*

A.R.S. § 13-105.14 (emphasis added). Section 13-804.B further defines the scope of restitution by directing the court to consider "all *losses caused by the criminal offense* or offenses for which the defendant has been convicted." A.R.S. § 13-804.B (emphasis added).

¶7     These statutes, considered together, define those losses for which restitution should be ordered. First, the loss must be economic. Second, the loss must be one that the victim would not have incurred but for the defendant's criminal offense. As the court of appeals noted, however, "'but for' causation does not suffice to support restitution, for if it did, restitution would extend to consequential damages. Yet our criminal code expressly provides the contrary." *Wilkinson*, 198 Ariz. at 380 ¶ 19, 10 P.3d at 638 ¶ 19. By eliminating consequential damages, the statutory scheme imposes a third requirement: the criminal conduct must directly cause the economic loss. If the loss results from the concurrence of some causal event other than the defendant's criminal conduct, the loss is indirect and consequential and cannot qualify for restitution under Arizona's statutes. *See State v. Lindsley*, 191 Ariz. 195, 198, 953 P.2d 1248, 1251 (App. 1997). We

5

hold, therefore, that the statutes direct a court to award restitution for those damages that flow directly from the defendant's criminal conduct, without the intervention of additional causative factors.

## B.

¶8 Applying the above standards, the court of appeals concluded that Porter's victims could not recover any restitution. We disagree in part.

¶9 When Porter, presenting himself as a licensed contractor, entered agreements with T.S. and N.L. to provide contracting services, he violated A.R.S. section 32-1151. As a direct result of Porter's offer to act as a licensed contractor, T.S. and N.L. agreed to pay, and did pay, all or a portion of the amounts due under their agreements with Porter. Porter's criminal actions directly caused those losses. Indeed, the original conception of restitution, and the form with the most direct link to criminal conduct, is that

> of forcing the criminal to yield up to his victim the fruits of the crime. The crime is thereby made worthless to the criminal. This form of criminal restitution is sanctioned not only by history but also by its close relationship to the retributive and deterrent purposes of criminal punishment.

*United States v. Fountain*, 768 F.2d 790, 800 (7th Cir. 1985). Under Arizona's statutes, these victims are entitled to recover their payments to Porter as restitution.

6

¶10     A different result obtains, however, as to the expenses the victims incurred because Porter failed to complete the work he contracted to do or did so in a faulty manner. We agree with the court of appeals that Porter's criminal conduct of contracting without a license did not cause these losses. These losses would not have occurred without the concurrence of a second causal event, Porter's unworkmanlike performance. Therefore, the losses incurred as a result of Porter's poor and unfinished work constitute indirect damages and cannot qualify for restitution.

## C.

¶11     Our conclusion that the restitution statutes encompass only damages directly caused by the criminal conduct involved not only remains faithful to the statutory language, but also prevents the restitution statutes from conflicting with the right to a civil jury trial preserved by Arizona Constitution Article II, Section 23. Article II, Section 23 protects the right to a jury trial as it existed when Arizona's constitution was adopted. *Rothweiler v. Superior Court*, 100 Ariz. 37, 41, 410 P.2d 479, 482 (1966); *see also Hoyle v. Superior Court*, 161 Ariz. 224, 228, 778 P.2d 259, 263 (App. 1989) (discussing the extent of the common law right to jury trial in 1910).

¶12     Potential problems arise if we too broadly combine civil liability with criminal sentencing. As the court of appeals has noted:

> If reparations as a condition of probation are to include elements beyond mere "special damages" we believe a trial court must use great caution. The sentencing phase of a criminal case is not the ideal forum for the disposition of a [civil] case. Both parties are deprived of a jury; the defendant may be limited in showing causation or developing a defense of contributory negligence or assumption of risk.[4]

*State v. Garner*, 115 Ariz. 579, 581, 566 P.2d 1055, 1057 (App. 1977).

¶13    By limiting restitution to those damages that flow directly from a defendant's criminal conduct, the legislature focused upon the primary purposes of restitution:  reparation to the victim and rehabilitation of the offender.  *State v. Howard*, 163 Ariz. 47, 51, 785 P.2d 1235, 1239 (App. 1989).  Porter was convicted of contracting without a license.  Requiring him to pay restitution for damages that resulted directly from the criminal conduct serves to rehabilitate him and thereby to prevent him from again violating A.R.S. section 32-1151.  The penalty thus fits squarely within the goals of criminal punishment and does not deprive him of a civil trial to which he might otherwise be entitled.

**D.**

¶14    The majority opinion of the court of appeals also suggested that the reason the victims cannot recover damages for

---

[4]    In fact, the sentencing judge indicated that T.S. and N.L. may not have been able to recover in a civil action because they failed to investigate whether Porter held a valid contractor's license. (Hr'g Tr. at 75-76).

8

the harm caused by Porter's unworkmanlike performance is that such damage is not an element of the crime of which he was convicted. *Wilkinson,* 198 Ariz. at 381 ¶ 22, 10 P.3d at 639 ¶ 22. In his dissent, Judge Ryan took issue with this statement, noting that restitution is available for damage directly caused by criminal conduct, even if the damage is not an element of the crime. *Id.* at 383 ¶ 34, 10 P.3d at 641 ¶ 34 (Ryan, J. dissenting). As the dissent stated, although breaking a window is not an element of the crime of burglary, *see* A.R.S. § 13-1507.A, a burglar may be required to pay restitution for a window he breaks when entering, because his criminal conduct directly causes the damage. On this issue we agree with the dissent: the conduct causing damage need not be an element of the crime for which the defendant is convicted to make the loss restitution-eligible. The test is whether particular criminal conduct directly causes the victim's loss. In this case, damage caused by Porter's unworkmanlike performance does not meet the statutory requirements for restitution because the criminal conduct did not directly cause the damage, not because the statute omits unworkmanlike conduct as an element of the crime of which Porter was convicted.

## IV.

¶15     The State also argues that Porter's conduct directly caused the victims' harm because they were barred from recovery under A.R.S. section 32-1132. Section 32-1132 establishes a fund,

9

administered by the Registrar of Contractors, to compensate persons injured by residential contractors. A.R.S. § 32-1132.A. Because Porter was unlicensed, he was not, by definition, a residential contractor. The State contends that the victims' lack of access to the fund flowed directly from Porter's criminal conduct.

¶16     The State's argument confuses damage causation with access to a particular source of recovery. The loss the victims suffered consisted of the monies they paid to Porter, a loss directly caused by Porter's criminal conduct, and the loss they suffered from Porter's failure or inability to perform the work properly, which is not a direct result of his acting without a license. The necessary direct causal relationship between the criminal conduct and the claimed losses must remain the focus of the restitution statutes. The fact that the victims have no recourse to the statutory recovery fund affects not their economic loss, but rather the sources from which they can seek payment of losses caused by a factor other than Porter's criminal conduct.

**V.**

¶17     For the foregoing reasons, we vacate the opinion of the Court of Appeals, vacate the judgment of the Superior Court, and remand to the Phoenix Municipal Court for a new restitution hearing, the restitution award to be made in a manner consistent

10

with this opinion.

_____
Ruth V. McGregor, Vice Chief Justice

CONCURRING:


_____
Charles E. Jones, Chief Justice


_____
Thomas A. Zlaket, Justice


_____
Stanley G. Feldman, Justice