IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

THE STATE OF ARIZONA,                )
                                     )
                          Appellee,  )        2 CA-CR 2007-0379
                                     )        DEPARTMENT B
                     v.              )
                                     )        O P I N I O N
ROBERT LEEROY SLOVER,                )
                                     )
                          Appellant. )
_____)

APPEAL FROM THE SUPERIOR COURT OF GILA COUNTY

Cause No. CR20050508

Honorable Peter J. Cahill, Judge

AFFIRMED IN PART;
VACATED IN PART AND REMANDED

Terry Goddard, Arizona Attorney General
  By Kent E. Cattani and Jonathan Bass                          Tucson
                                                   Attorneys for Appellee

Emily Danies                                                    Tucson
                                                  Attorney for Appellant

E C K E R S T R O M, Presiding Judge.

¶1 Appellant Robert Slover was convicted after a jury trial of negligent homicide, driving under the influence of an intoxicant (DUI), and driving with a blood alcohol concentration of .08 or more. The trial court sentenced him to a mitigated, two-year term of imprisonment for negligent homicide, and, for the other two offenses, suspended the imposition of sentence, placing him on concurrent terms of five years' probation. On appeal, Slover argues the trial court erred in ordering him to pay the victim's wife's attorney fees as restitution to the extent those fees compensated the attorney for assisting the state in his prosecution. Slover also contends the court erred in denying his request for a jury instruction on a superseding cause of death, refusing to admit habit evidence that Slover and the victim drove each other's vehicles, and denying his motion for mistrial based on a tainted jury pool. For the following reasons, we affirm Slover's convictions and sentences but vacate the portion of the restitution order awarding the victim's wife attorney fees incurred in assisting the state in its prosecution of Slover.

¶2 We view the facts in the light most favorable to sustaining the convictions, resolving conflicts in the evidence and the reasonable inferences arising from the evidence against the defendant. *State v. Zmich*, 160 Ariz. 108, 109, 770 P.2d 776, 777 (1989). At trial, the evidence showed that Slover had been driving his pickup truck on a rural highway at night.[1] The truck left the roadway and rolled down an embankment, landing on its roof

_____

[1]Slover originally told officers who responded to the scene that he had been driving the vehicle, but later stated to medical personnel that he had been the passenger.

2

and hood over a shallow creek. Officers found the passenger of the truck dead, lying in the creek with his head submerged in the water. The victim's blood alcohol concentration was .231 at the time of his death. Within two hours of the accident, Slover's blood alcohol concentration was .165.

¶3        After being treated for his injuries, Slover was arrested and charged with manslaughter, DUI, and driving with a blood alcohol concentration of .08 or more. The jury found Slover guilty of negligent homicide and the two other charges. Slover filed a timely notice of appeal from the judgment and sentence.

## RESTITUTION

¶4        Slover argues the trial court erred when it ordered him to pay the victim's wife's attorney fees, incurred in assisting the state in pursuing the case, as part of restitution.[2] We review a restitution order for an abuse of the trial court's discretion. *State v. Reynolds*, 171 Ariz. 678, 681, 832 P.2d 695, 698 (App. 1992). A trial court abuses its discretion if it misapplies the law or exercises its discretion based on incorrect legal principles. *See State v. Jackson*, 208 Ariz. 56, ¶ 12, 90 P.3d 793, 796 (App. 2004). Slover contends the fees were "unnecessary consequential damages" because the victim's wife did not need to hire an attorney to represent her in the criminal matter.

¶5        Under A.R.S. § 13-603(C), a person convicted of an offense must "make restitution to the . . . immediate family of the victim if the victim has died, in the full amount

---

[2]The state has taken no position on this issue.

3

of the economic loss as determined by the court." Economic loss as the result of the commission of an offense "includes lost interest, lost earnings and other losses that would not have been incurred but for the offense" but do not include damages for pain and suffering, punitive damages, or consequential damages. A.R.S. § 13-105(16).[3]

> Consequential damages are such as are not produced without the concurrence of some other event attributable to the same origin or cause; such damage, loss, or injury as does not flow directly and immediately from the action of the party, but only from the consequences or results of such act. The term may include damage which is so remote as not to be actionable.

*State v. Morris*, 173 Ariz. 14, 17, 839 P.2d 434, 437 (App. 1992), *quoting* 25 C.J.S. *Damages* § 2, at 617. In sum, a court should order restitution for "damages that flow directly from the defendant's criminal conduct, without the intervention of additional causative factors." *State v. Wilkinson*, 202 Ariz. 27, ¶ 7, 39 P.3d 1131, 1133 (2002).

¶6 Slover emphasizes the victim's wife was not a party in the criminal case and had there been a violation of her rights in those proceedings, she "had full access to a crime victim advocate and the prosecuting attorney." Thus, he contends, the attorney fees she incurred to pursue the criminal charges against Slover did not result from Slover's criminal conduct but from the fact that the victim's wife unnecessarily hired an attorney to assist the prosecutor.

---

[3]At the time Slover committed the offenses, this same provision was found in former A.R.S. § 13-105(14). *See* 1995 Ariz. Sess. Laws, ch. 199, § 1.

**¶7** The record before us suggests Slover has correctly characterized the role played by the wife's counsel, Michael Harper, during the criminal proceedings. During the restitution hearing, Harper presented evidence of expenses he had incurred in connection with his representation of his client in the criminal proceedings against Slover. Specifically, he enumerated actions he had taken to have "th[e] case pursued by the County Attorney's Office." He also told the court he had been "quite vocal and quite active" in encouraging the state to file charges and was "active in trying to locate [Slover] out of state." He stated he had worked to assure that evidence was properly preserved. The court characterized Harper's actions during the criminal proceedings as "assisting the State, . . . prodding the officers, and . . . prodding the State as well," and ordered Slover to pay the victim's wife restitution for Harper's services in the amount of $5,028.[4]

**¶8** In essence, Harper acted in the role of an adjunct prosecutor, "prodding" the state to pursue the case and apparently assisting it with the prosecution. To that extent, his fees did not flow directly from the defendant's criminal conduct but rather arose from either the state's inability to prosecute the case independently and competently or the wife's mistrust that it would do so. Those factors constituted an additional cause, independent of Slover's own criminal conduct, that resulted in the attorney fees at issue. *See Wilkinson*, 202

---

[4]Slover was also ordered to pay restitution for the attorney fees to settle the victim's estate, which he did not contest below or in this appeal. *See State v. Spears*, 184 Ariz. 277, 292, 908 P.2d 1062, 1077 (1996) (concluding "'customary and reasonable attorney's fees incurred to close the victim's estate'" constitute economic loss for restitution purposes), *quoting State v. Baltzell*, 175 Ariz. 437, 439, 857 P.2d 1291, 1293 (App. 1992).

Ariz. 27, ¶ 10, 39 P.3d at 1133 (losses that "would not have occurred without the concurrence of a second causal event" were consequential damages); *State v. Sexton*, 176 Ariz. 171, 173, 859 P.2d 794, 796 (App. 1993) (damages resulting from defendant's conduct and action or inaction of others too indirect to recover in restitution); *State v. Pearce*, 156 Ariz. 287, 289, 751 P.2d 603, 605 (App. 1988) (lost profits consequential damages of theft not flowing from the acts to which defendant pled guilty). Those fees were therefore consequential rather than direct damages arising from Slover's crime and not recoverable as restitution under Arizona statute. *See* 1995 Ariz. Sess. Laws, ch. 199, § 1 (former version of § 13-105(16)).

¶9 We do not address whether such fees would be proper restitution items under other factual circumstances, such as when the victim hires an attorney to assert a concrete right under the Victims' Bill of Rights. *See* Ariz. Const. art. II, § 2.1; A.R.S. §§ 13-4403(A), 13-4437(A); *see also State v. Guilliams*, 208 Ariz. 48, ¶¶ 18-19, 23, 90 P.3d 785, 790-91, 792 (App. 2004) (causation determination case-specific in restitution context). Here, however, where it is clear the attorney's representation of the victim in the criminal matter consisted of tasks that were actually the state's responsibility, those attorney fees were not incurred as a direct result of the offenses Slover had committed.

### SUPERSEDING CAUSE INSTRUCTION

¶10 Slover argues the trial court erred when it denied his request for a jury instruction on superseding cause, asserting it was supported by reasonable evidence in the record. We review for an abuse of discretion a trial court's denial of a requested jury

6

instruction. *State v. Cox*, 217 Ariz. 353, ¶ 15, 174 P.3d 265, 268 (2007). At trial, Slover requested a superseding cause instruction, arguing there was evidence that "the accident in this case didn't produce fatal injuries or injuries that by themselves would cause the death of [the victim]." Specifically, Slover contends there was no definitive evidence the crash rendered the victim unconscious, and therefore the victim could have crawled out of the truck and gotten in the water by himself and then been unable to remove himself due to his intoxication.

¶11        An intervening event must be unforeseeable and abnormal or extraordinary to qualify as a superseding cause that can excuse a defendant from liability for a criminal act. *State v. Bass*, 198 Ariz. 571, ¶¶ 12-13, 12 P.3d 796, 801 (2000) (recognizing criminal standard for superseding cause same as civil); *see also Rossell v. Volkswagen of Am.*, 147 Ariz. 160, 168, 709 P.2d 517, 525 (1985) (defendant not liable only when intervening cause considered superseding cause). However, "[a]n intervening force is not a superseding cause if the original actor's negligence creates the very risk of harm that causes the injury." *Young v. Envtl. Air Prods., Inc.*, 136 Ariz. 206, 212, 665 P.2d 88, 94 (App. 1982), *modified on other grounds and aff'd*, 136 Ariz. 158, 665 P.2d 40 (1983). Nor can an intervening cause be considered a superseding cause when the defendant's conduct "increases the foreseeable risk of a particular harm occurring through . . . a second actor." *Ontiveros v. Borak*, 136 Ariz. 500, 506, 667 P.2d 200, 206 (1983).

¶12    The trial court refused to give the instruction, finding "it's certainly foreseeable that you go down a relatively steep and long hill . . . that there would be a canyon there, and . . . that there would be water there." The court found it was irrelevant whether the victim had gotten out of the truck on his own or been ejected, that Slover's actions had placed the victim "in a situation where reasonably he could not have extracted himself," which precluded the superseding cause instruction.

¶13    Both the state's medical examiner, who performed the victim's autopsy, and the defense's expert witness, the Chief Medical Examiner for Yavapai County, agreed that the cause of the victim's death was asphyxiation caused by "drowning and blunt injuries of the head." The medical examiner who performed the autopsy determined the cause of drowning was a loss of consciousness due to a head injury. The Chief Medical Examiner testified that, although the findings suggested a possible loss of consciousness, he disagreed with the conclusion in the autopsy report that the victim had definitely been unconscious when he suffocated. He opined it was possible for someone to be conscious but intoxicated enough to drown and concluded the victim's blood alcohol concentration was high enough that it could have prevented him from taking his head out of the water.

¶14    Even assuming the latter testimony was sufficient to establish a potential intervening cause for the victim's death, it could not constitute a superseding cause to relieve Slover of liability. Slover's conduct of driving while intoxicated was the very reason the victim had ended up near or in a creek, intoxicated, with head injuries, and, at the very least,

8

increased the foreseeable risk that the victim would die in the accident. *See Rourk v. State*, 170 Ariz. 6, 12, 821 P.2d 273, 279 (App. 1991) (finding accident caused by intoxicated driver part of foreseeable chain of events even though exact details of driver's conduct not foreseeable); *see also State v. Vandever*, 211 Ariz. 206, ¶ 8, 119 P.3d 473, 475 (App. 2005) (other driver exceeding speed limit not superseding cause of collision when defendant's illegal conduct created foreseeable risk of collision). Slover was therefore not entitled to an instruction on superseding cause, and the court did not abuse its discretion in so finding.

## HABIT EVIDENCE

¶15    Slover argues the trial court erred in sustaining the state's objection to his proposed habit evidence. We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *State v. Spreitz*, 190 Ariz. 129, 146, 945 P.2d 1260, 1277 (1997). Slover maintained at trial that he had not been driving and did not cause the victim's death. In support of the argument, Slover attempted to admit evidence he and the victim sometimes drove each other's vehicles. At an evidentiary hearing on the fourth day of trial, Slover attempted to provide foundation for habit evidence through the testimony of a gas station attendant who knew Slover and the victim. She testified that, over the four-year period she had worked there, when the men came into the store together, Slover frequently was driving when they arrived while the victim was the driver when they left. She also testified both men drove black trucks and she could not tell the trucks apart.

9

¶16        Rule 406, Ariz. R. Evid., provides:

> Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

Habit evidence, as opposed to character evidence, is generally admissible. *Spreitz*, 190 Ariz. at 146, 945 P.2d at 1277. The rule contemplates conduct that is "semi-automatic and regular." *State v. Munguia*, 137 Ariz. 69, 72, 668 P.2d 912, 915 (App. 1983); *accord State v. Serna*, 163 Ariz. 260, 266, 787 P.2d 1056, 1062 (1990). "Habit describes one's regular response to a repeated specific situation, while character refers to a generalized description of one's disposition." *Boswell v. Phoenix Newspapers, Inc.*, 152 Ariz. 1, 4, 730 P.2d 178, 181 (App. 1985), *approved as supplemented*, 152 Ariz. 9, 730 P.2d 186 (1986). "[E]stablishing habit requires more than a sparse selection of isolated episodes." *Gasiorowski v. Hose*, 182 Ariz. 376, 380, 897 P.2d 678, 682 (App. 1994).

¶17        Here, the trial court exhaustively explained its reasons for sustaining the objection. It found the attendant's testimony had not established that the conduct at issue—the victim driving Slover's truck—was "semi-automatic or refle[x]ive," or sufficiently specific, regular or numerous to qualify as habit evidence. In summing up its reasons, the court stated, "The evidence is not specific or frequent enough to qualify as habit. Instead, it was to show merely a tendency at one location, the [gas s]tation, under particular

circumstances which don't apply and are not present here, that one would drive to and the other would drive away."

¶18　　　We agree with that reasoning and hold that the trial court did not abuse its discretion when it concluded the evidence was not admissible as evidence of habit under Rule 406.  *See Serna*, 163 Ariz. at 265-66, 787 P.2d at 1061-62 (testimony it was common knowledge among inmates that cooperation with prison administration resulted in immunity and favorable treatment did not show routine practice under Rule 406); *Munguia*, 137 Ariz. at 71-72, 668 P.2d at 914-15 (evidence assault victim "often bummed drinks" not admissible under Rule 406 because not "semi-automatic and regular").

## MOTION FOR MISTRIAL

¶19　　　Slover argues the trial court erred when it denied his motion for a mistrial after a juror was removed for cause on the fourth day of trial.  We review a trial court's denial of a motion for mistrial for a clear abuse of discretion.  *State v. Williams*, 209 Ariz. 228, ¶ 47, 99 P.3d 43, 54 (App. 2004).  "The trial judge is in the best position to determine whether a particular incident calls for a mistrial because the trial judge is aware of the atmosphere of the trial, the circumstances surrounding the incident, the manner in which any objectionable statement was made, and the possible effect on the jury and the trial."  *Id.*

¶20　　　At the close of the third day of trial, the prosecutor informed the trial court she had just learned her daughter had been spending time with the daughter of one of the jurors.  Before trial began on the fourth day, Slover moved to strike the juror for cause.  The court

questioned the juror, and then Slover's counsel asked if she had alerted any of the other jurors about her daughter's relationship with the prosecutor's daughter. The juror responded that, as she had been writing a question for the court on that very topic, the other jurors asked her about its content and she responded only that "it had to do with a play date of our daughters." The defense moved for a mistrial on the ground the juror had shared the information. The court denied the motion but excused the juror.

¶21      The trial court then informed the remaining members of the panel that the juror had been excused, and stated, "You should not draw any conclusions whatsoever from that. You should not hold it against either party, and actually you should not give it any further thought once we are finished here talking about it." The court then asked the jury if anyone had heard what the excused juror had said when she was writing the question. One of the remaining jurors stated he had, but assured the court that nothing he had heard would cause him "to be partial in this case." Another juror stated she "d[id]n't really remember what she said, what it was totally about." The court finally asked, "Anybody, do you think because of the fact that [the juror] was excused because of what she may have told you, what you may remember, if you can, . . . would that cause you to be partial in this case to one side or the other?" The court received no response to this question, and stated, "Don't draw any conclusions from all of that, it's no big deal, okay?" Trial then proceeded.

¶22      Slover now contends the "inference of a relationship between a juror and the prosecutor . . . so contaminated the panel that they could not fairly listen to the evidence and

12

give it the impartial deliberation [to] which [Slover] was entitled." But a mistrial is "the most dramatic remedy for a trial error" and should only be granted when "justice will be thwarted otherwise." *State v. Roque*, 213 Ariz. 193, ¶ 131, 141 P.3d 368, 399 (2006). "Trial courts have considerable discretion to determine whether juror misconduct requires a mistrial or other corrective action, and the trial court's decision will not be overturned absent a clear abuse of that discretion." *State v. Apodaca*, 166 Ariz. 274, 276-77, 801 P.2d 1177, 1179-80 (App. 1990).

**¶23** First, nothing in the record suggests the excused juror informed the panel that her daughter had spent time with the prosecutor's daughter. Rather, the juror testified she had told the other jurors more vaguely that her daughter had played with the daughter of one of the attorneys. Thus, any members of the jury who had heard that statement could not have formed a bias against either party.

**¶24** Second, even assuming the excused juror had specifically referred to the prosecutor's daughter, the only other juror who remembered hearing it assured the court he could be impartial. *See State v. Clabourne*, 142 Ariz. 335, 344, 690 P.2d 54, 63 (1984) (jury panel not tainted by one panel member blurting out "'the entire defense was a lot of baloney'" when not clear any jurors heard remark, jurors interviewed separately about insanity defense, and juror who made statement excused); *State v. Montano*, 136 Ariz. 605, 606-07, 667 P.2d 1320, 1321-22 (1983) (interests of justice did not dictate excusing entire jury panel after one juror made potentially prejudicial remark, was excused, and court

13

questioned remaining jurors about impartiality). And the trial court instructed the entire jury to not draw any conclusions from anything they had heard. We presume the jurors followed the court's instructions. *See State v. McCurdy*, 216 Ariz. 567, ¶ 17, 169 P.3d 931, 938 (App. 2007). We find no abuse of discretion in the court's decision not to grant a mistrial.

**¶25** Accordingly, Slover's convictions and sentences are affirmed but the trial court's order of restitution is vacated and the case is remanded for a new restitution determination consistent with this decision.[5]

_____
PETER J. ECKERSTROM, Presiding Judge

CONCURRING:


_____
J. WILLIAM BRAMMER, JR., Judge



_____
GARYE L. VÁSQUEZ, Judge

_____

[5]During the restitution hearing, the victim's counsel testified that he "may have allocated, at least in this case, a little bit of money toward the victims' representation that should have been allocated towards the probate fees." Because the trial court ordered both the probate and victim representation fees as restitution, it was not necessary for it to determine at that time which items may have been wrongly allocated. But our decision now requires the court to make that determination. We therefore remand the case rather than simply vacating the portion of the order awarding victim representation fees in the amount of $5,028.