NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

-----

IN RE COREY K.

No. 1 CA-JV 16-0064
FILED 8-2-2016

-----

Appeal from the Superior Court in Yavapai County
No. P1300JV201400253
The Honorable Anna C. Young, Judge

**VACATED AND REMANDED WITH INSTRUCTIONS**

-----

COUNSEL

Yavapai County Attorney's Office, Prescott
By Amy C. Drew
*Counsel for Appellee State of Arizona*

Roberts & Carver, PLLC, Prescott
By Jerry Carver
*Counsel for Appellee K.S. Excavation, L.L.C., et al.*

Law Office of Florence M. Bruemmer, P.C., Anthem
By Florence M. Bruemmer
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Patricia K. Norris delivered the decision of the Court, in which Judge Patricia A. Orozco and Judge Peter B. Swann joined.

---

**N O R R I S**, Judge:

¶1        Corey K. appeals from the superior court's restitution order entered after he admitted to criminally damaging construction equipment owned by the victim, an excavation company ("the Company"). *See* Ariz. Rev. Stat. ("A.R.S.") § 13-1602 (Supp. 2015).[1]   We reject Corey's argument that the court abused its discretion in ordering him to pay restitution for the revenues the Company lost because of his criminal conduct. We agree with Corey, however, that the court should not have ordered restitution for all of the attorneys' fees the Company incurred because Corey's criminal conduct did not directly cause the Company to incur all of the fees. Accordingly, we vacate the restitution order and remand to the superior court to re-determine the amount of attorneys' fees the Company is entitled to as restitution and re-enter the restitution order as instructed below.

¶2        On November 20, 2015, the superior court held a contested restitution hearing.  The owners of the Company, S.S. and K.S., testified about the losses the Company had incurred when Corey and two other juveniles criminally damaged its construction equipment, which included an excavator, two backhoes, a compactor, a loader, and a dump truck. Based on the evidence presented, the superior court found the Company was entitled to $90,650.86 in restitution, which included a stipulated amount of $10,356.86, $66,500 in lost revenue, and $13,794 for attorneys' fees.  The superior court divided the restitution among the juveniles, ordering Corey to "pay partial restitution in the amount of $30,216.53."  The court also ordered Corey and his parents to be jointly and severally responsible for that amount.

¶3        Corey first argues the superior court abused its discretion by including in the restitution order the $66,500 in revenue the Company lost during the time it was unable to perform excavation work while its

---

[1]Although the Arizona Legislature amended certain statutes cited in this decision after the date of the offenses, the revisions are immaterial to the resolution of this appeal. Thus, we cite to the current version of these statutes.

equipment was being repaired. *See In re William L.*, 211 Ariz. 236, 239, ¶ 10, 119 P.3d 1039, 1042 (App. 2005) (appellate court reviews restitution order for abuse of discretion). We reject this argument; the State demonstrated by a preponderance of the evidence that the Company was entitled to restitution for these losses. *See id.* at 238, ¶ 6, 119 P.3d at 1041.

¶4            Under A.R.S. § 8-344(A) (2014), when "a juvenile is adjudicated delinquent, the court . . . shall order the juvenile to make full or partial restitution to the victim of the offense for which the juvenile was adjudicated delinquent." Restitution is appropriate for a victim's losses that, first, "are economic," second, "would not have occurred but for the juvenile's delinquent conduct," and third, "are directly caused by the delinquent conduct (e.g. not consequential damages)." *In re Andrew C.*, 215 Ariz. 366, 368, ¶ 9, 160 P.3d, 687, 689 (citing *State v. Wilkinson*, 202 Ariz. 27, 29, ¶ 7, 39 P.3d 1131, 1133 (2002)). The guiding principle is for restitution to make the victim whole to the extent the law permits. *Id.* at 368, ¶ 11, 160 P.3d at 689.

¶5            At the restitution hearing, the State introduced into evidence a spreadsheet prepared by the Company listing the construction equipment Corey and the other two juveniles damaged. S.S. testified that when Corey and the other two juveniles "vandalized" the Company's machines, the Company had been working for a local developer on a construction project and had been charging the developer the Company's standard hourly rate for each machine. S.S. explained the Company had been operating each machine for the developer "[f]ive days a week ten hours each day." S.S. further explained the Company had been unable to operate the machines on the developer's project while the machines were being repaired. Thus, S.S. calculated the Company's $66,500 in lost revenue by multiplying the Company's hourly rate for a particular machine times ten hours per day for each day the machine was out of service for repairs and then totaling those amounts.

¶6            K.S. testified the Company had used the equipment at least 50 hours per week on the project. He also testified the Company would often use the equipment to "do work on Saturdays" on other jobs as well. K.S. further explained that after the Company removed its equipment from the jobsite for repairs, the project's developer "had to hire . . . some other equipment and some other people . . . to do the work" to meet project deadlines. K.S. explained the Company lost "revenue on other jobs" when he "had to turn [them] away because [he] did not have the equipment to go do those jobs." K.S. and S.S. also explained that during the time the Company's equipment was out of service, it continued to incur operating

expenses for employee payroll,[2] tractor loans, workers' compensation insurance, and equipment and liability insurance. Although the State did not introduce into evidence any contracts between the Company and the developer, or billing and payment records between the developer and the Company, the foregoing testimony of S.S. and K.S. constituted credible, adequate evidence of the revenues the Company lost that it would not have lost but for Corey's criminal conduct, and which were directly caused by his conduct.

**¶7**         Corey nonetheless argues the superior court abused its discretion in ordering restitution for the Company's lost revenues because the State failed to provide any "expense sheets to demonstrate *net* losses (they would need to pay employees, taxes, etc. while the equipment was in use)." Corey did not raise this argument in the superior court, however. Accordingly, he has waived it and cannot raise it on appeal. *See Cty. of La Paz v. Yakima Compost Co., Inc.*, 224 Ariz. 590, 606, ¶ 49, 233 P.3d 1169, 1185 (App. 2010) (arguments not raised in trial court are waived on appeal); *see also In re Kory L.*, 194 Ariz. 215, 220, ¶ 16, 979 P.2d 543, 548 (App. 1999) ("The right to contest restitution can be waived."). Even assuming Corey did not waive this argument, under the circumstances of this case, we would reject it. Although the State did not present any written evidence of the Company's expenses, K.S. and S.S. testified about the Company's operating expenses. *See supra* ¶ 6. And, K.S. also testified the Company had to take out a $100,000 loan to maintain "working capital" so it could stay in business given the revenue losses it had experienced because of Corey's criminal conduct.

**¶8**         Corey next argues the superior court should not have ordered restitution for the $13,794 in attorneys' fees the Company incurred, because he did not directly cause the Company to incur these fees and thus they constituted consequential damages. After reviewing the record, we agree with Corey that at least some of the fees incurred by the Company were not directly caused by his criminal conduct and constituted consequential damages, and should not have been included in the superior court's restitution order.

**¶9**         As discussed, *see supra* ¶ 4, a restitution award may not include "consequential damages." *State v. Slover*, 220 Ariz. 239, 242, ¶ 5, 204 P.3d 1088, 1091 (App. 2009) (quoting A.R.S. § 13-105(16) (Supp. 2015)).

_____

[2]K.S. explained he "searched for things for [his] employees to do so they didn't go off to somebody else" because he could not "afford to lose [his] employees."

Consequential damages are those that do not flow directly from the criminal conduct. *State v. Sexton*, 176 Ariz. 171, 172, 859 P.2d 794, 795 (App. 1993). Thus, if a victim's "loss results from the concurrence of some causal event other than the defendant's criminal conduct, the loss is indirect and consequential and cannot qualify for restitution under Arizona's statutes." *State v. Wilkinson*, 202 Ariz. 27, 29, ¶ 7, 39 P.3d 1131, 1133 (2002).

¶10    Here, K.S. testified he hired an attorney, J.C., so he could "understand all of the legal aspects" of the situation the Company found itself in. J.C. testified at the restitution hearing and submitted a billing statement, which the superior court admitted into evidence, that consisted of 59 entries of time billed on the case; each entry briefly described the work performed. After reviewing these entries, and based on the testimony, it appears J.C.'s legal services fell into three general categories.

¶11    First, it appears J.C. worked with the Company and its owners to help the Company recover restitution by, for example, helping them demonstrate and document the losses the Company had experienced. The fees for these services qualify as a loss recoverable as restitution and are distinguishable from the fees we held were improperly included in restitution in *Slover*. 220 Ariz. at 243, ¶ 8, 204 P.3d at 1092. In *Slover*, we held that an attorney's fees were "consequential rather than direct damages arising from" the defendant's crime, and thus not recoverable as restitution when the attorney "had worked to assure that evidence was properly preserved" for the prosecutor's use in prosecuting the underlying crime. *Id.* at 243, ¶¶ 7-8, 204 P.3d at 1092. Unlike the situation in *Slover*, here J.C. did not assist in preserving evidence for use in prosecuting the underlying criminal damage charge, but instead provided legal services to the Company to help it prove its losses for purposes of restitution. *Cf. State v. Leteve*, 237 Ariz. 516, 530-31, ¶ 59, 354 P.3d 393, 407-08 (2015) (assuming that attorneys' fees incurred by crime victims in enforcing their victims' rights is compensable in restitution, trial court did not abuse its discretion in including such fees in restitution order).

¶12    Second, it appears J.C. evaluated a possible tort claim against Corey, the other two juveniles, and their parents. These services are too attenuated from Corey's criminal conduct to be properly included as restitution because the services were provided in anticipation of the Company possibly bringing a separate legal action against the juveniles and their parents. Although the Company would not have incurred these fees but for Corey's criminal offense, "but for" causation cannot support restitution, otherwise it would extend to consequential damages. *Wilkinson*, 202 Ariz. at 29, ¶ 7, 39 P.3d at 1133. And, these fees "would not have

occurred without the concurrence of a second causal event"—the Company's decision to consider a civil action against the juveniles and their parents. *Id.* at 29, ¶ 10, 39 P.3d at 1133. The superior court should not have included the fees for these services in its restitution order.

**¶13**         Third, it appears J.C. provided legal services to assist the county attorney in pursuing restitution. Insofar as J.C. was providing legal services to the county attorney, "it is clear the attorney's representation of the victim . . . consisted of tasks that were actually the state's responsibility," and "those attorney fees were not incurred as a direct result of the offenses" Corey committed. *Slover*, 220 Ariz. at 243, ¶ 9, 204 P.3d at 1092; *see also State v. Streck*, 221 Ariz. 306, 308, ¶ 10, 211 P.3d 1290, 1292 (App. 2009) (restitution inappropriate for expenses incurred by victim of stolen tractor in investigating and locating the tractor because such tasks were State's responsibility, and private costs associated with those tasks were consequential damages). When an attorney acts "in the role of an adjunct prosecutor," assisting the State with the prosecution, the fees for such work do "not flow directly from the defendant's criminal conduct but rather [arise] from either the state's inability to prosecute the case independently and competently or the [victim's] mistrust that it would do so." *Slover*, 220 Ariz. at 243, ¶ 8, 204 P.3d at 1092. The superior court should not have included the fees for these services in its restitution order.

**¶14**		For the foregoing reasons, we affirm the superior court's decision to include the Company's lost revenues in its restitution order. Nevertheless, because the superior court included all of the Company's attorneys' fees in the restitution order even though not all of the fees were directly caused by Corey's criminal conduct, we vacate the superior court's restitution order and remand to the superior court to re-determine the fees for legal services directly caused by Corey's criminal conduct. After re-determining the legal fees which may be included in the restitution order, the superior court shall re-enter the restitution order.[3]



**Ruth A. Willingham** · Clerk of the Court
FILED: AA

---

[3]In supplemental briefing authorized by this court to address whether the superior "court may subject Corey's parents to joint and several liability for the restitution above the liability limit established pursuant to A.R.S. §§ 8-344(C) (2014), 12-661(B) (2016)," Corey argued, and the State agreed, that the superior court exceeded its statutory authority when it ordered Corey's parents to be jointly and severally responsible for restitution in an amount exceeding $10,000. Because we have vacated the restitution order, we do not need to address the Company's argument that the superior court's order is final and conclusive regarding Corey's parents' joint and several liability. On remand, the superior court shall enter an order holding Corey's parents jointly and severally liable for the restitution it orders for Corey's criminal offense not to exceed $10,000. *See* A.R.S. §§ 8-344(C) and 12-661(B).