NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE BRIGHAM H.

No. 1 CA-JV 21-0097
FILED 10-7-2021

Appeal from the Superior Court in Mohave County
No. S-8015-JV-2020-00073
The Honorable Megan A. McCoy, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

E.M. Hale Law, Lakeside
By Elizabeth M. Hale
*Counsel for Appellant*

Mohave County Attorney's Office, Kingman
By Deborah L. Herbert
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Judge Paul J. McMurdie delivered the Court's decision, in which Presiding Judge Peter B. Swann and Judge David D. Weinzweig joined.

---

**M c M U R D I E**, Judge:

**¶1**         Brigham H. appeals from the juvenile court's restitution award to two victims for items stolen and damaged during a burglary, damage to a shop building, and the cost of new home security cameras. We conclude the juvenile court did not abuse its discretion by awarding the replacement cost of the stolen or damaged property or the cost of the new home security cameras and affirm the award.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**         In January 2020, Brigham and a codefendant[1] entered Daniel's property and stole three guns, several knives, ammunition, and a pair of binoculars.[2] They took the stolen items to a shop owned by the other victim, Gary, and fired the guns into the empty building damaging the roof and two doors.

**¶3**         Eventually, the State filed a delinquency petition charging Brigham with one count of minor in possession of a firearm, one count of theft, one count of criminal damage, two counts of burglary, and four counts of theft of a firearm. Brigham entered into a disposition agreement, admitting to the count of criminal damage and three counts of firearm theft. The agreement required Brigham to pay restitution for the economic loss for all counts.

**¶4**         To determine the restitution amount, the court held a contested restitution hearing. Gary submitted a restitution request totaling

---

[1]    The codefendant has also appealed from the restitution award. *See In re Monteith C.*, No. 1 CA-JV 21-0082, 2021 WL 4478643 (Ariz. App. Sept. 30, 2021).

[2]    To protect the identity of the victims, we refer to them by pseudonyms.

nearly $5000. He reduced this request by $400 at the hearing. Gary testified he sought $600 to replace a hollow metal door with several bullet holes. After seeking bids for its replacement, he arrived at the dollar amount and claimed the door could not be repaired because it was made of heavy gauge metal. To cover the cost of painting the replacement door, he requested another $420.

¶5 Next, Gary testified he was seeking about $3400 to replace a garage door with a bullet hole in its lower section. First, he tried to replace the damaged area, but it was impossible because that section was no longer manufactured. And although the bullet hole could be repaired, it would not look the same as before. Merely patching it would leave a visible mark, and the repair would not last. As a result, he sought to replace the whole door. Finally, Gary requested $50 to cover payment to an employee who repaired the damaged roof.

¶6 Daniel submitted a restitution request for $4750. Of that amount, he was seeking $2100 to replace three stolen guns that were returned damaged. He testified that he had paid $1000 for the first gun, estimated the price for replacing the second gun at $1000, and valued the third gun at $100. Although Daniel acknowledged the first two guns could be repaired, he wanted replacements because of the excellent condition the firearms were in before they were stolen. Daniel had no receipts for any of the guns.

¶7 A defense investigator testified that Daniel's first gun's firing pin could be replaced for under $50, but this did not account for other damage the weapon might have sustained. The investigator also testified that the second gun retailed between about $600 and $700. In addition, Brigham and his codefendant testified they returned the guns in a similar condition to when they stole them.

¶8 Daniel sought another $500 for the cost of security cameras he installed around his house after the burglary. He thought the cameras would help his family deal with their anxiety and fear, and his wife and daughters would feel safer. He also believed the cameras would help identify potential burglars, so he would not be left wondering about their identities.

¶9 Daniel also requested $300 for a damaged scope and testified the amount was based on what his wife told him it cost. Next, he asked for $150 for damaged binoculars, basing the amount on what he paid for them. He had no receipt for either item. He also estimated the value of stolen

ammunition at $800 and a stolen hunting knife at $200. Finally, he requested $700 for lost wages.

¶10        The juvenile court found both victims' testimony credible and their requests reasonable. Thus, the court ordered Brigham, his codefendant, and their parents to pay restitution of $4750 to Daniel and nearly $4500 to Gary, with credit for any payment made by Brigham, the codefendant, or a parent.

¶11        Brigham appealed, and we have jurisdiction under A.R.S. §§ 8-235(A) and 12-120.21(A)(1).

## DISCUSSION

¶12        On appeal, Brigham argues the juvenile court abused its discretion by (1) ordering restitution above the fair market value of the actual losses incurred; (2) ordering restitution for the cost of new security cameras not directly related to an actual loss suffered by the victims; (3) ordering restitution in an amount not supported by a preponderance of the evidence; and (4) failing to inquire into Brigham's ability to pay restitution.

¶13        We will not disturb the court's adjudication of a juvenile delinquent absent an abuse of discretion. *In re Kristen C.*, 193 Ariz. 562, 563, ¶ 7 (App. 1999); *see also State v. Slover*, 220 Ariz. 239, 242, ¶ 4 (App. 2009) ("A trial court abuses its discretion if it misapplies the law or exercises its discretion based on incorrect legal principles."). We will uphold a restitution award if it "bears a reasonable relationship to the victim's loss." *State v. Lindsley*, 191 Ariz. 195, 197 (App. 1997). We view the facts in the light most favorable to affirming the juvenile court's findings. *In re Andrew A.*, 203 Ariz. 585, 586, ¶ 5 (App. 2002).

A.        **The Juvenile Court Did Not Abuse Its Discretion by Failing to Use the Fair Market Value in Awarding Restitution.**

¶14        The "court has wide discretion in setting restitution based on the facts of each case." *State v. Dixon*, 216 Ariz. 18, 21, ¶ 11 (App. 2007) (quoting *State v. Ellis*, 172 Ariz. 549, 551 (App. 1992)). While "the fair market value of the victim's property at the time of the loss will realistically reflect the actual loss" in most cases, "[f]air market value will not always be the appropriate standard." *State v. Ellis*, 172 Ariz. 549, 551 (App. 1992). A court "has discretion to use other measures of economic loss when fair market value [does] not make the victim whole." *Id.* at 550. In some cases, "the original purchase price, or even the replacement cost might be considered."

*Id.* at 551. But because restitution is intended to make the victim whole, not punish the defendant, the court may have to reduce the victim's loss by any benefits conferred. *Gilbert Prosecutor's Office v. Downie*, 218 Ariz. 466, 469, ¶ 13 (2008). Courts may "credit victims with the value of returned property when considering restitution." *Id.* at ¶ 12.

**¶15**        Brigham argues the juvenile court should have compared the fair market value of Daniel's items when they were stolen to the fair market value of his items that were returned. But returning stolen items in a lesser condition does not benefit the victim and thus does not require the court to credit that return. Here, the juvenile court found that replacement cost would be the appropriate measure for Daniel's items because the items were in good condition when stolen and damaged upon return. Similarly, the juvenile court found that Gary could not be "made whole" without replacing both damaged doors. As a result, a restitution order for the replacement cost of the items and doors was appropriate. The juvenile court did not abuse its discretion by using replacement costs.

**B.     The Juvenile Court Did Not Abuse Its Discretion by Awarding Restitution for New Security Cameras.**

**¶16**        A court must "require the convicted person to make restitution . . . in the full amount of the economic loss as determined by the court." A.R.S. § 13-603(C). In ordering restitution for economic loss, the court "shall consider all losses caused by the criminal offense or offenses for which the defendant has been convicted." A.R.S. § 13-804(B); *see also* A.R.S. § 13-105(16) ("'Economic loss' means any loss incurred by a person as a result of the commission of an offense."). But economic loss does not include consequential damages. A.R.S. § 13-105(16).

**¶17**        Thus, a court may order restitution only if: (1) the loss is economic; (2) the loss would not have occurred but for the defendant's criminal offense; and (3) the criminal conduct directly caused the economic loss, such that the loss was not consequential. *State v. Wilkinson*, 202 Ariz. 27, 29, ¶ 7 (2002).

**¶18**        The cost of installing new home security cameras is directly attributable to criminal conduct if it was "incurred 'in an effort to restore the victim's equanimity' following the criminal offense." *State v. Quijada*, 246 Ariz. 356, 369 ¶ 44 (App. 2019) (quoting *State v. Brady*, 169 Ariz. 447, 448 (App. 1991)).

**¶19**        Brigham argues the security camera expenses were not directly caused by the criminal conduct and cannot be part of the restitution

order. But Daniel's testimony shows that he installed the security cameras to restore his equanimity following the burglary. He hoped the cameras would provide him the peace of mind in knowing his family feels safe and any future crimes could be more smoothly resolved. As a result, the criminal conduct caused the installation cost directly, and restitution was appropriate.

**C.    The Juvenile Court Did Not Abuse Its Discretion by Finding Daniel's Requested Amounts Proven by a Preponderance of the Evidence.**

¶20        "The State has the burden of proving a restitution claim by a preponderance of the evidence." *State v. Lewis*, 222 Ariz. 321, 324, ¶ 7 (App. 2009). Brigham argues the State failed to meet this burden because Daniel could not recall the brand of some of the stolen items, nor could he provide any receipts. No such evidence is required. The juvenile court could evaluate Daniel's testimony and determine that his claim was credible, reasonable, and supported by the evidence. *See State v. Stutler*, 243 Ariz. 128, 131, ¶ 8 (App. 2017) (victim's testimony and loss affidavit held sufficient to support a $900 award). This court does not reweigh the evidence presented. *In re Andrew A.*, 203 Ariz. at 587, ¶ 9.

**D.    The Juvenile Court Did Not Commit Reversible Error by Failing to Inquire into Brigham's Ability to Pay Restitution.**

¶21        When a juvenile is adjudicated delinquent, the court must, "after considering the . . . earning capacity of the juvenile," order the juvenile to make restitution to the victim. A.R.S. § 8-344(A). In ordering restitution under A.R.S. § 8-344(A), the court may also order the juvenile's parents to make restitution to the victim. A.R.S. § 8-344(C). If the court orders the juvenile's parents to make restitution, the court must still order the juvenile to make restitution "regardless of the juvenile's insufficient earning capacity." *Id.*

¶22        Here, the only evidence of Brigham's earning capacity is the testimony of Brigham's legal advocate that Brigham is "working for his restitution and the fines. He's working hard. He would like to pay the restitution." But any harm caused by the court's failure to inquire further would not harm Brigham, who must make restitution regardless of his earning capacity. Instead, it would harm Brigham's parents, who were joined in the restitution order without inquiry into Brigham's ability to pay. Brigham's parents, however, are not parties to this appeal. We thus do not address the issue further.

## CONCLUSION

¶23    We affirm the award.



AMY M. WOOD • Clerk of the Court
FILED:    AA