39 P.3d 527

HURLEY TRUCKING CO., INC., Hurley Distribution Co., Inc., Plaintiffs–Appellees,

v.

STATE of Arizona, ex rel., ARIZONA DEPARTMENT OF TRANSPORTATION, Defendant–Appellant.

No. 1 CA–TX 99–0020.

Court of Appeals of Arizona, Division One, Department T.

Jan. 29, 2002.

**4**

Janet Napolitano, Attorney General, by John William Ranby, Assistant Attorney General and Joseph A. Kanefield, Assistant Attorney General, Phoenix, for Appellant.

The Cavanagh Law Firm, P.A., by Jeffrey B. Smith and Peter C. Guild, Phoenix, for Appellees.

## OPINION

NOYES, J.

¶ 1 This appeal requires us to interpret and apply the 1988 amendments to former Arizona Revised Statutes ("A.R.S.") section 28–1551(4) and (5) in resolving claims filed by appellees Hurley Trucking Co., Inc., and Hurley Distribution Co., Inc. (collectively "Hurley"), for refunds of Arizona use fuel and motor carrier taxes paid to appellant Arizona Department of Transportation ("ADOT") from June 1, 1993, through January 14, 1997.[1]

1. The legislature revised and renumbered Title 28, A.R.S., effective October 1, 1997. In this opinion we refer to the pertinent statutes by their designations in effect from 1988, when the critical amendment was adopted, through 1997, the year in which the legislature again amended the operative statutes.

## FACTUAL AND LEGAL BACKGROUND

¶ 2 Article 9, Section 14, of the Arizona Constitution requires that all fees, excises, or license taxes relating to the registration, operation, or use of vehicles on Arizona's public highways, or fuels for such use, be dedicated to "highway and street purposes," as broadly defined in that provision.[2] In accordance with Section 14, the legislature created the Arizona highway user revenue fund ("HURF"), into which all such collections are to be deposited and thereafter distributed by ADOT to the state, counties, cities, and towns for use as contemplated by Section 14. See A.R.S. § 28–1598.

¶ 3 At all times material to this litigation, Arizona imposed a use fuel tax governed by A.R.S. §§ 28–1551 to –1587, and a motor carrier tax, also called the "weight-mileage" tax, governed by A.R.S. § 28–1599 to –1599.13.[3] All use fuel taxes and motor carrier taxes were deposited in HURF along with other Arizona fees, excises, or taxes for "highway and street purposes" pursuant to Article 9, Section 14, of the Arizona Constitution. See A.R.S. §§ 28–1557(A), –1595, –1598, –1599.05. ADOT uses HURF monies for road and highway construction and maintenance, debt service on transportation bonds, and administrative costs. ADOT also distributes HURF monies to counties and cities for their own "highway and street purposes." See A.R.S. § 28–1598.

¶ 4 The State Highway System contains approximately 6,130 linear miles of roads comprehending some 26,000 lane-miles. County road systems and city street systems include an additional 35,378 miles. Some of these roads are built on rights-of-way acquired from the United States government. ADOT, the counties, and the cities are responsible for building, maintaining, and operating their respective road systems, including

2. The automobile license tax imposed in lieu of personal property taxes by Article 9, Section 11, of the Arizona Constitution is excepted from this requirement.

3. The legislature changed the "motor carrier tax" to a "motor carrier fee" based strictly on vehicle weight effective October 1, 1997. See 1997 Ariz. Sess. Laws, ch. 8, §§ 34–55.

those portions on rights-of-way over federal lands.

¶ 5 Federal road right-of-way grants to ADOT, the counties, and the cities confer on them perpetual rights to design, construct, maintain, and operate roads and related improvements in the right-of-way, and give them exclusive possession of the right-of-way area. The roads themselves belong to ADOT, the counties, and the cities.

¶ 6 The United States government is responsible for building, maintaining, and operating more than 14,000 additional miles of roads in Arizona. These are usually secondary roads owned and operated by the National Park Service, the National Forest Service, the Bureau of Indian Affairs, and other federal agencies, to serve federal lands within their control. ADOT, the counties, and the cities have no responsibility for these roads. Use fuel and motor carrier taxes were and are not collected for truckers' use of these roads, and no HURF monies are expended in building or maintaining them.

¶ 7 The use fuel tax is imposed on "use fuel used in the propulsion of a motor vehicle on any **highway within this state** at the same rate per gallon as the motor vehicle fuel license tax [on gasoline]." *See* A.R.S. § 28–1552(A) (emphasis added). Though the use fuel tax is collected by vendors, its incidence is on the consumer of use fuel on Arizona streets or highways. *See* A.R.S. §§ 28–1551(14)–(16), –1552(A)–(B), –1554, –1555.

¶ 8 Before they were amended (by 1988 Arizona Session Laws, Chapter 109, Section 6), subsections (4) and (5) of A.R.S. § 28–1551 provided:

In this article [A.R.S. §§ 28–1551 to – 1587], unless the context otherwise requires:

. . . .

4. "Highway" means any way or place in this state of whatever nature, open to

the use of the public, for purposes of traffic, including highways under construction.

5. "In this state" means within the exterior limits of the state of Arizona and includes all territory within these limits owned by or ceded to the United States of America.

In 1988, the legislature amended subsections (4) and (5) as follows:

In this article, unless the context otherwise requires:

. . . .

4. "Highway" means any way or place in this state of whatever nature, WHICH IS MAINTAINED BY PUBLIC MONIES OR open to the use of the public, for purposes of traffic VEHICULAR TRAVEL, including highways under construction.

5. "In this state" means ANY WAY OR PLACE within the exterior limits of the state of Arizona and includes BUT EXCLUDES all territory within these limits owned by or ceded to the United States of America.

1988 Ariz. Sess. Laws, ch. 109, § 6 (Strikeouts indicate deletions; capitalization indicates additions.).

¶ 9 From 1988 to 1996, Hurley and other trucking concerns continued to pay use fuel and motor carrier taxes with no deductions or exclusions predicated on the 1988 amendments. In June 1996, through a Phoenix tax consulting firm, Hurley claimed refunds of all such taxes paid from June 1993 to June 1996 in connection with the use of all HURF roads built in Arizona on rights-of-way over federal land.[4] Hurley later supplemented its claim to include all taxable periods through January 14, 1997. The ADOT audit administrator denied Hurley's claim.

---

4. In 1997, the legislature amended the definition of "in this state" to "any way or place within the exterior limits of the state of Arizona but excludes all territory within these limits THAT IS MAINTAINED BY PUBLIC MONIES, INCLUDING ANY SUCH WAY OR PLACE THAT IS owned by or ceded to the United States of America." Ariz. Sess. Laws, ch. 2, § 1. Section 2 of the enactment stated that the act did not consti-

tute a change in the law, and Section 3 made it effective retroactive to September 30, 1988. However, because the amendment arguably does more than clarify, we do not consider this enactment in interpreting the 1988 amendments. *See generally S & R Props. v. Maricopa County*, 178 Ariz. 491, 500, 875 P.2d 150, 159 (App.1993); *E.C. Garcia & Co. v. Ariz. Dep't of Revenue*, 178 Ariz. 510, 517, 875 P.2d 169, 176 (App.1993).

**6**

¶ 10 ADOT Administrative Law Judge ("ALJ") Barry A. McNaughton conducted a hearing on the denial in December 1997.[5] The ALJ ruled for ADOT. Hurley brought this administrative review action in the tax court pursuant to A.R.S. §§ 12–901 to –914 (1992 & Supp.2001) to challenge the ADOT administrative decision. After briefing and argument, the tax court reversed ADOT's final order and entered judgment for Hurley. ADOT timely appealed. Our appellate jurisdiction derives from A.R.S. § 12–2101(B) (1994).

## ANALYSIS AND RESOLUTION

### Standard of Review

¶ 11 On appeal from a superior court judgment ruling on appeal from a final administrative order, the court of appeals reviews the record to determine whether the administrative action was illegal, arbitrary, capricious, or an abuse of discretion. *Romo v. Kirschner*, 181 Ariz. 239, 240, 889 P.2d 32, 33 (App.1995). In such cases, the court of appeals is free to reach its own conclusion on issues of statutory interpretation. *See Dioguardi v. Superior Court*, 184 Ariz. 414, 417, 909 P.2d 481, 484 (App.1995); *Siegel v. Arizona State Liquor Bd.*, 167 Ariz. 400, 401, 807 P.2d 1136, 1137 (App.1991).

### A.R.S. § 28–1551(4) and (5)

¶ 12 This appeal turns on the meaning and effect of the 1988 amendments to A.R.S. § 28–1551(4) and (5). ADOT maintains that the amendment's language is ambiguous and uncertain, and that there is no indication independent of Hurley's assertions about the statute's meaning that the 1988 legislature had any intention to exclude from the tax base all uses of use fuel on every segment of any state street or highway that is located on an easement or right-of-way over land owned by the federal government. Hurley contends that the operative statutory language is plain and unambiguous on its face, and that this court cannot construe or interpret it without intruding into the legisla-

tive sphere of government and thereby violating the doctrine of separation of powers.

¶ 13 The tax court adopted Hurley's view. It characterized ADOT's position as inviting the court to disregard the common import of the amended statute's language. Hurley defends the tax court's ruling through similar reasoning. It argues that the 1988 amendment "could not have been clearer."

> Before 1988, under the "includes" language ADOT taxed the use of essentially all roadways over federal lands. The 1988 Legislature changed the scope of the tax definition and required the exclusion of the previously included roadways from the scope of the tax.

Relying on *Janson ex rel. Janson v. Christensen*, 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991), Hurley contends that this court cannot resort to extrinsic aids in interpreting A.R.S. § 28–1551(4) and (5) without violating the fundamental principle that when statutory language is clear, unequivocal, and unambiguous, the court must give effect to the language and may not invoke the rules of statutory construction to interpret it. *E.g., Paging Network of Ariz., Inc. v. Ariz. Dep't of Revenue*, 193 Ariz. 96, 97, ¶ 8, 970 P.2d 450, 451 (App.1998) (stating that a court may resort to the rules of statutory construction to determine legislative intent when the meaning of statutory terms is uncertain, but the rules of construction have no legitimate function if a statute is unambiguous, and the court must effectuate language as written unless this would lead to absurd or impossible results).

¶ 14 We cannot agree that the 1988 amendments were clear and unambiguous. We find that the words with which the legislature chose to amend A.R.S. § 28–1551(5) significantly clouded its meaning. Pre–1988 A.R.S. § 28–1551(5) defined "in this state" as a standard adjective phrase: " 'In this state' means within the exterior limits . . . ." The noun phrase "any way or place" did not appear in the definition of "in this state," and was contained only in the definition of "highway" in subsection (4): " 'Highway' means any way

---

5. Hurley's original claim sought refunds of taxes relating to the use of all roads designated as interstate or U.S. highways regardless of the underlying land's ownership. At or around the time of the hearing, Hurley withdrew that portion of its claim.

or place in this state of whatever nature, open to the use of the public, for purposes of traffic . . . ."

¶ 15 The 1988 amending legislation newly inserted "any way or place" into the definition of the adjective phrase "in this state." As revised, the statute provided that " '[i]n this state' means ANY WAY OR PLACE within the exterior limits of the state of Arizona BUT EXCLUDES all territory within these limits owned by or ceded to the United States of America." The text of subsection (5) no longer treated "in this state" as an adjective phrase after the 1988 amendment, but characterized it instead in terms of a noun phrase ("any way or place"). The insertion of that phrase also generated uncertainty about whether the analogous, existing term "territory" was intended to carry a meaning that was different from, or consistent with, "any way or place."

¶ 16 If we assume that the 1988 legislature had intended to make "a 180° swing in the operative definition of 'in this state' " as Hurley insists, the legislative choice to insert "any way or place" in that definition was an unaccountable adoption of mere surplusage. Hurley's reading of the 1988 amendments accordingly runs afoul of a basic principle of statutory interpretation: words, phrases, clauses, and sentences in statutes are presumed to perform a function and not to be merely "void, inert, redundant or trivial." *Adams v. Bolin,* 74 Ariz. 269, 276, 247 P.2d 617, 621 (1952); *see also Ruiz v. Hull,* 191 Ariz. 441, 450, ¶ 35, 957 P.2d 984, 993 (1998) (stating that in construing statutes, an appellate court must read the language as a whole and give meaningful operation to each provision). This principle applies with particular force to a word or phrase purposely inserted into an existing statute by amendment. Treating statutory words as surplusage is like throwing away pieces of a jigsaw puzzle, and has a similar consequence—the picture that results may not resemble the one that the drafter intended.

¶ 17 We conclude, contrary to the view of Hurley and the tax court, that after the 1988 amendment the meaning of A.R.S. § 28-1551(5) was no longer clear, unequivocal, and unambiguous. The addition of "any way or place" injected uncertainty into the once-clear definition of "in this state." Application of the rules of statutory construction is therefore appropriate and necessary to assist in construing the statute. *See Centric–Jones Co. v. Town of Marana,* 188 Ariz. 464, 468, 937 P.2d 654, 658 (App.1996) (stating that if an ambiguity prevents the court from ascertaining the legislative intent from a statute, the court resorts to the rules of construction).

¶ 18 In determining the meaning of uncertain statutory language, an appellate court will read the statute as a whole and consider the statute's context, subject matter, historical background, effects and consequences, and spirit and purpose. *Zamora v. Reinstein,* 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996). The statutory scheme and the record on appeal in this case provide ample information on which we may apply these principles.

¶ 19 We turn first to the language of the 1988 amendments themselves. As we have said, we cannot treat the phrase "any way or place" newly inserted into the definition of "in this state" as mere functionless verbiage. Some articulable purpose must have actuated the 1988 legislature's decision to copy that phrase from the existing version of subsection (4) and paste it into subsection (5).

¶ 20 The words "any way or place" themselves, considered in the context of both subsections (4) and (5), are the best clue to the nature of the underlying legislative purpose. The 1988 legislature's choice to insert the words "any way or place" into § 28-1551(5) can be explained most cogently as evidencing a determination to redirect the focus of subsections (4) and (5) from ownership of the underlying land to ownership of the highway itself. Subsection (4) certainly supports this interpretation. That subsection has used "any way or place" in defining "highway" all along.

¶ 21 Against that textual background, the 1988 legislature's choice to amend subsection (5) to employ "any way or place" suggests an intention to modify subsections (4) and (5) to function in substance as a two-part characterization of the unitary concept of "highway

in this state." Reading subsections (4) and (5) together yields a logically coherent conception of "highway in this state" as

any kind of "way or place" inside Arizona's exterior limits that is

(1) either

(a) maintained by public monies for vehicular travel or

(b) open to public use for vehicular travel

**and**

(2) not owned by or ceded to the United States.

Viewed in this way, the amended definitions provide that any HURF road on a state, county, or city right-of-way overlying federal land constitutes a "highway in this state,"

because the road itself is not "owned by or ceded to the United States."

¶ 22 From the beginning of this litigation, Hurley has founded its refund claims on the "plain and unambiguous" approach to the 1988 amendments to A.R.S. § 28–1551(4) and (5). Hurley has never seriously argued that its own literalist interpretation of those amendments was congruent with the circumstances surrounding their adoption, or for that matter, with the context, subject matter, historical background, effects and consequences, spirit and purpose, or any other factor to which courts advert in determining a statute's meaning. *See Zamora*, 185 Ariz. at 275, 915 P.2d at 1230. This record demonstrates to us without question that all the aforementioned considerations compel ADOT's, the ALJ's, and our own reading of the 1988 amendments.[6] We will not unduly

6. We agree with the ALJ's findings regarding the motivation for the legislature's 1988 amendments:

5. Prior to 1980, Arizona assessed taxes for travel over all roads within the boundaries of Arizona. In 1980, the United States Supreme Court decided *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136 [100 S.Ct. 2578, 65 L.Ed.2d 665] (1980). That decision held that Arizona could not impose its taxes on non-Indians engaged in timber harvesting on reservations, *at least* where the roads "have been built, maintained, and policed exclusively by the Federal Government, the Tribe, and its contractors." 448 U.S. at 150 [100 S.Ct. 2578]. The Court acknowledged the state's interest in compensation for use of its roads, but noted there was no need to compensate the state for travel over the roads at issue in the case, as the state incurred no expense in constructing or maintaining those roads.

6. In 1983, A.R.S. [§ ] 28–1599(6), pertaining to *the motor carrier tax*, was amended to limit its application to roads constructed or maintained with public monies. [*See* 1983 Ariz. Sess. Laws, ch. 70, § 1.] Previously, the statute purported to authorize taxation for travel over all roads open to the public, which would have included those roads built, maintained and policed by the Federal Government or an Indian Tribe, that is, the statute would have included those roads for which taxation was prohibited by *Bracker*. The Administrative Law Judge infers that the amendment was intended to conform the statute to the *Bracker* decision and its implementation. There was no similar amendment of the statute pertaining to the *use fuel tax* at that time.

7. Between 1982 and 1988, after *Bracker*, in administering both the use fuel tax and the motor carrier tax, Respondent implemented the *Bracker* decision. Respondent did not seek

to impose taxes for travel over roads built, maintained and policed by the Federal Government or an Indian Tribe.

8. Prior to September 30, 1988, A.R.S. [§ ] 28–1551 authorized by its definitions[ ] the imposition of use fuel tax for travel on all roads in Arizona and specifically included "territory [ . . . ] owned by or ceded to the United States of America." The definitions specifically applied only "in this article," that is, in reference to the use fuel tax. The implementation of the *Bracker* decision meant the words of the statute were not followed.

9. In 1988, effective September 30 of that year, the Legislature in Senate Bill 1168 amended the A.R.S. [§ ] 28–1551 definitions of "highway" and "in this state," as well as many other Title 28 statutes. The bill ran 26 pages and none of the other topics included in the bill involved significant changes in existing law. In the Senate, the bill was described as making "multiple conforming changes to Title 28." See Exhibit 4. In the House, it was described as "clean-up legislation." See exhibit 5. The definition of "highway" added the phrase "which is maintained by public monies." . . .

10. From 1988 through 1995, Petitioners, Respondent and all other concerned parties acted as though the 1988 amendment made no change in the applicability of the use fuel tax. They all acted as though the statutory change only made the statute conform to *Bracker*. The Respondent continued to collect tax for travel on all roads not built, maintained and policed by the Federal Government or an Indian Tribe. Petitioners and other motor carriers continued to report and pay tax for travel on all roads not built, maintained and policed by the Federal Government or an Indian Tribe. This included a substantial, though as yet undetermined, number of miles of roads built and maintained

lengthen this opinion with an exhaustive exposition of all of those considerations, but we will briefly discuss some of them.

¶ 23 The legislative context in which the 1988 amendments were adopted is wholly inconsistent with Hurley's interpretation of their meaning. Senate Bill 1168 (1988), which later became 1988 Arizona Session Laws, Chapter 109, contained amendments to six sections of A.R.S. Title 28. Amendments to five of these sections were of relatively minor consequence. They included provisions concerning release of driving records, title, and registration information; telephonic change of address notifications; the deadline for motor vehicle dealers' license renewal applications; record retention requirements for fuel distributors; and the definition of a "new motor vehicle dealer." *See* 1988 Ariz. Sess. Laws, ch. 109, §§ 1–5. The sixth section's amendments comprised the amendments to A.R.S. § 28–1551, with which this appeal is concerned. *See* 1988 Ariz. Sess. Laws, ch. 109, § 6.

¶ 24 Neither the Joint Legislative Budget Committee nor ADOT prepared fiscal impact studies concerning any reduction of HURF revenues anticipated from Senate Bill 1168. Senate Bill 1168 was presented to both the House and Senate Transportation Committees as "conforming changes." Testimony of an ADOT representative before the House Transportation Committee on the bill characterized the bill as "clean-up legislation." State of Ariz., Minutes of the Comm. on Transp., H.R. 38–S.B. 1168, 2d Sess., at 4 (May 3, 1988). The Senate's Transportation Committee hearing records on Senate Bill 1168 reflect no discussion on any provision of the bill other than a brief one on the telephonic change of address notice provision. State of Ariz., Minutes of the Comm. on Transp., S. 38–S.B. 1168, 2d Sess., at 9 (Feb. 18, 1988). No representatives of the trucking industry, counties, cities, or towns testified at either Chamber's committee hearing.

¶ 25 From the effective date of the 1988 amendments until 1996, ADOT and members of the trucking industry continued to conduct business on the principle that use fuel taxes and motor carrier taxes applied to travel on all roads that ADOT maintained. During this period, the legislature amended provisions of Title 28 that concerned use fuel and motor carrier taxes, but did not revisit the concept of "highway in this state."

¶ 26 ADOT presented much evidence to the ALJ demonstrating that if implemented in 1988 and thereafter, Hurley's interpretation of the 1988 amendments to A.R.S. § 28–1551(4) and (5) would have drastically and adversely affected the fiscal soundness of HURF and its credit-worthiness in the bond market, and imposed on ADOT the considerable, pointless burden of determining the fee ownership of the land underlying thousands of miles of highway rights-of-way throughout Arizona. The fact that neither the legislature nor any potentially affected parties displayed any awareness of these consequences in 1988 or the eight years that followed is further support for the ALJ's conclusion that the 1988 legislature had no intention to take the action that Hurley now attributes to it. We therefore conclude that the tax court erred in reversing ADOT's final administrative order denying Hurley's refund claim.

¶ 27 In view of our resolution of this appeal, we need not consider whether the definitions in A.R.S. § 28–1551(4) and (5) applied to the motor carrier tax because those subsections were *in pari materia* with the provisions in A.R.S. § 28–1599 to –1599.13; whether the 1997 legislature's retroactive amendment of A.R.S. § 28–1551(5) could properly clarify the intent underlying the 1988 legislature's amendment of that statute; whether applying the 1997 amendment in this case would deprive Hurley of due process of law by depriving it of vested substantive rights; or whether Hurley's interpretation of § 28–1551(5) would violate the equal protection rights of truckers who use HURF roads that do not overlie federal land.

by the state and its subdivisions on land owned by the United States of America. Respondent's personnel understood the 1988 amendment of the use fuel definitions to conform to *Bracker,* and the policies established previously. The federally owned land on which state roads lie include some roads on Indian reservations and in national forests.

## CONCLUSION

¶ 28 The tax court judgment is reversed and remanded with directions to affirm ADOT's final administrative order.

SULT, P.J. and GARBARINO, J., concurring.