IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Respondent*,

*v.*

JOHN LEO DAVIS, *Petitioner*.

No. 1 CA-CR 24-0457 PRPC

FILED 05-20-2026

Petition for Review from the Superior Court in Maricopa County
No. CR2015-114088-001
The Honorable Suzanne E. Cohen, Judge

**REVIEW GRANTED; RELIEF GRANTED IN PART AND DENIED IN
PART**

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Casey Hutchinson, Jason Easterday
*Counsel for Respondent*

Debrigida Law Offices, PLLC, Glendale
By Ron M. Debrigida, Jr.
*Counsel for Petitioner*

**OPINION**

Judge Samuel A. Thumma delivered the opinion of the Court, in which
Judge Angela K. Paton joined. Presiding Judge Kent E. Cattani dissented in
part.

**T H U M M A**, Judge:

¶1 John Leo Davis seeks review of the superior court's summary dismissal of his post-conviction relief (PCR) petition filed under Arizona Rule of Criminal Procedure 33 (2026).[1] For the reasons that follow, this court grants review and grants relief in part and denies relief in part.

### FACTS AND PROCEDURAL HISTORY

¶2 In March 2015, Davis repeatedly stabbed his wife M.D. in their Goodyear home, where they lived with their six minor children. M.D. died from the stab wounds. Davis was charged with first degree murder, child abuse and related offenses.

¶3 Maternal grandparents paid for M.D.'s funeral and burial expenses. They cared for the children, including paying to move them to California and adopt them. Maternal grandparents also paid various probate expenses relating to M.D. and her estate. In mid-2015, maternal grandparents, "as victim representatives for" the victim children (collectively "victims"), obtained unopposed restitution liens on Davis' Maricopa County real estate. *See* Ariz. Rev. Stat. (A.R.S.) § 13-806(A).

¶4 In January 2020, Davis pled guilty to second degree murder. In the plea agreement, he agreed to "pay restitution to all victims . . . for all economic losses . . . in an amount not to exceed $10,000,000.00." In April 2020, the court sentenced Davis to prison for 25 calendar years. The court retained jurisdiction over restitution.

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

¶5          The victims filed a timely motion for restitution that, as relevant here,[2] sought the following:

| Category of Restitution Sought | Amount Sought |
| --- | --- |
| Costs of raising the six children, based on an evaluation provided for the costs to raise each of the children until they turned 20 years old. | $982,515 |
| Estate and children's expenses from March to December 2015. | $14,179 |
| Probate attorneys' fees. | $40,469.15 |
| Legal fees for custody and adoption of the children. | $19,801.56 |

¶6          The court held a restitution hearing in October 2020. Davis did not contest the method used "to project the estimated future costs for what raising the children would be" and, for the other categories of restitution sought, conceded the victims "actually paid those expenses or are expected to pay those expenses."[3] Davis argued the amounts sought were not "economic loss" recoverable as restitution under A.R.S. § 13-105(16) but, instead, were "consequential damages expressly precluded as restitution." The victims countered that the requested amounts would not have been incurred but for the crime, were incurred as a direct result of the crime and were recoverable economic losses.

---

[2] The victims also sought $12,087.04 in funeral expenses and $2,427.08 in moving expenses, which Davis did not contest and were awarded by the superior court. To the extent Davis seeks to challenge the moving expense award now, he waived that challenge. *See Odom v. Farmers Ins. Co. of Ariz.*, 216 Ariz. 530, 535 ¶ 18 (App. 2007). The superior court rejected a restitution claim for nearly $2,100 in estate fiduciary fees, which is not at issue here.

[3] To the extent Davis now argues the restitution amounts sought were "estimates" or should have been "recompute[d]," he waived those arguments. *See Odom*, 216 Ariz. at 535 ¶ 18. Similarly, Davis did not challenge how the amounts were calculated.

**¶7**        After receiving documentary evidence, but taking no testimony, the court ordered Davis to pay the four categories of requested restitution listed above. In October 2020, the court awarded the victims a total of $1,071,479.61 in restitution.

**¶8**        In January 2021, Davis filed a notice of post-conviction relief. After several extensions, and appointment of counsel, in November 2023, Davis filed a timely petition for post-conviction relief, claiming the "restitution portion of the sentence imposed was not authorized by law or the plea agreement," asserting the court ordered restitution for amounts that are "clearly consequential." *See* Ariz. R. Crim. P. 33.1(c) (noting grounds for relief for a PCR petition include that "the sentence as imposed is not authorized by law or by the plea agreement").

**¶9**        After considering Davis' petition, responses by the State and the victims, Davis' reply and other filings, the court dismissed the petition. The court found Davis failed to state a colorable claim entitling him to post-conviction relief under Rule 33. The court concluded the State had proved by a preponderance of the evidence the restitution awarded, and that the restitution awarded constituted economic loss, not consequential damages. Davis timely filed a petition for review to this court. This court permitted both Davis and the State to supplement their briefs to address the impact of *E.H. v. Slayton*, 259 Ariz. 472 (2025), which was decided when this matter was pending before this court.

## DISCUSSION

**¶10**        Summary dismissal of a PCR petition is appropriate if it presents no "material issue of fact or law that would entitle the defendant to relief." Ariz. R. Crim. P. 33.11(a). This court reviews the summary dismissal of a PCR petition for an abuse of discretion. *State v. Bennett*, 213 Ariz. 562, 566 ¶ 17 (2006). Davis contends the restitution awarded was contrary to law and his plea agreement because:  (1) the restitution ordered was not supported by a preponderance of the evidence; (2) the court misapplied the law in awarding the categories of restitution and (3) the court erred in failing to hold an evidentiary hearing.

## I.        Davis Waived His Argument that the Restitution Awarded Was Not Proven by a Preponderance of the Evidence.

**¶11**        Davis seeks to challenge the finding that the State proved the restitution by a preponderance of the evidence. Davis' petition in the superior court, however, did not press this ground. Accordingly, this argument is waived. *See, e.g.*, A.R.S. § 13-4239(C); Ariz. R. Crim. P.

33.16(c)(4); *State v. Bortz*, 169 Ariz. 575, 578 (App. 1991) (citing cases); *State v. Wagstaff*, 161 Ariz. 66, 71 (App. 1988). Moreover, the record shows that the restitution awards were proven by a preponderance of the evidence.

## II.     Davis Has Shown No Error in the Restitution Awards.

**¶12**          Davis argues the restitution awards "are clearly consequential, and did not flow directly from [Davis'] conduct." By statute, "the court *shall* require the convicted person to make restitution to the person who is the victim of the crime or to the immediate family of the victim if the victim has died, ***in the full amount of the economic loss*** as determined by the court and in the manner as determined by the court or the court's designee." A.R.S. § 13-603(C) (emphasis added); *see also* A.R.S. § 13-804(B) ("In ordering restitution for economic loss . . . , the court shall consider all losses caused by the criminal offense or offenses for which the defendant has been convicted."). As further defined by statute:

> "Economic loss" means any loss incurred by a person as a result of the commission of an offense. Economic loss includes lost interest, lost earnings and other losses that would not have been incurred but for the offense. Economic loss does not include losses incurred by the convicted person, damages for pain and suffering, punitive damages or consequential damages.

A.R.S. § 13-105(16). In the appropriate circumstances, restitution "includes losses incurred after sentencing." *State v. Morgan*, 248 Ariz. 322, 327 ¶ 17 (App. 2020) (citation omitted). Mechanically, restitution "shall be paid to the clerk of the court for disbursement to the victim." A.R.S. § 13-603(C). The victim also may press a civil claim to recover other amounts, such as for pain and suffering, consequential damages and punitive damages. *See* A.R.S. § 13-807; *accord Town of Gilbert Prosecutor's Off. v. Downie ex rel. Cnty. of Maricopa*, 218 Ariz. 466, 469 ¶ 14 (2008) (citing authority).[4]

---

[4] The option of pressing a separate civil lawsuit does not, as Davis infers, displace the ability to seek criminal restitution.

¶13	The Arizona Supreme Court repeatedly has declared that "restitution should be ordered for losses that (1) are economic; (2) would not have been incurred by the victim but for the criminal offense; and (3) were directly caused by the criminal conduct." *E.H.*, 259 Ariz. at 381-82 ¶ 11 (citations omitted); *State v. Reed*, 252 Ariz. 328, 330 ¶ 9 (2022) (same); *State v. Wilkinson*, 202 Ariz. 27, 29 ¶ 7 (2002) (similar). This standard, often called the *Wilkinson* test, applies here. Davis has shown no error because the restitution amounts meet all three elements of the *Wilkinson* test.

### A.	Future Costs of Raising the Children.

¶14	Davis argues the restitution award for the costs of raising the children was error because "the majority of the claims are for *future* expenses." However, "future economic losses, including lost earnings, can be awarded as restitution if they satisfy the *Wilkinson* test." *E.H.*, 259 Ariz. at 382 ¶ 14; *accord State v. Howard*, 168 Ariz. 458, 459-60 (App. 1991) (affirming restitution order for future medical care and future lost wages; noting "restitution for economic losses of the victim yet to be incurred at the time of sentencing" is proper if "reasonably anticipated to be incurred in the future as a result of the defendant's actions").

¶15	The superior court found the "future cost[s] of raising the children . . . are actual losses rather than consequential damages" because they were foreseeable or a natural consequence of Davis murdering his wife. Before the murder, Davis and his wife were legally obligated to pay the expenses involved in raising the children until they turn 18 years old. *See Savage v. Thompson*, 22 Ariz. App. 59, 62 (1974). Given Davis' crime, his wife was killed and Davis was sentenced to prison until long after the children will become adults. As the superior court noted, after the murder, the children were "without parents" and "[s]omeone has to raise" them. Although noting that maternal grandparents "made a choice to adopt and raise their grandchildren," the court added that "it is foreseeable that a family member would rise to the occasion" to raise them.

¶16	Davis argues "[t]he costs inherent in raising children existed in this case independent of the homicide, but the victim representative's decisions to seek and accept legal responsibility for these costs are intervening causative factors." *Wilkinson*, the authority relied on by Davis in making this argument, does not support his assertion.

¶17	In *Wilkinson*, the defendant's crime was falsely representing himself as a licensed contractor when entering into a contract to remodel homes. 202 Ariz. at 29 ¶ 9. The court affirmed an award of restitution to the

victims for the amounts they paid under their agreements with the unlicensed contractor. *Id.* What *Wilkinson* found was not recoverable as restitution was "the expenses the victims incurred because [the unlicensed contractor] failed to complete the work he contracted to do or did so in a faulty manner," reckoning those expenses "would not have occurred without the concurrence of a second causal event, [the unlicensed contractor's] unworkmanlike performance." *Id.* at ¶ 10.

¶18        Unlike *Wilkinson*, there is no such "second causal event" attributable to Davis. Davis' killing the victim meant someone other than the victim or Davis would need to parent the children. That maternal grandparents stepped forward to do so does not, under *Wilkinson*, mean they could not recover those expenses directly caused by Davis' crime. *See E.H.*, 259 Ariz. at 384 ¶ 22; *Howard*, 168 Ariz. at 459-60. The superior court properly could have concluded it was foreseeable that family members – like maternal grandparents – would take measures to raise the children given Davis' crime (killing the children's mother) and his resulting imprisonment, leaving no parent who could raise the minor children. *See State v. Morris*, 173 Ariz. 14, 18 (App. 1992) ("[R]estitution should be ordered for actual damages, that are the natural consequences of the defendant's conduct or when the court determines that the losses were foreseeable, considering the nature and character of defendant's criminal actions.").

¶19        The superior court noted the maternal grandparents "made a choice to adopt and raise their grandchildren" as a proxy for the children's murdered mother. The court then awarded maternal grandparents the costs of raising the grandchildren until they turned 20 years old. However, under Arizona law, as applicable here, a child is emancipated "[o]n the child's eighteenth birthday." A.R.S. § 25-503(Q)(2). Absent circumstances not apparent from the record, upon turning 18 years old, a parent's obligation to support a child ends. *See Savage*, 22 Ariz. App. at 62. Moreover, the superior court did not provide any rationale for why it extended the restitution award until the children turn 20 years old. Accordingly, that portion of the restitution order cannot stand. Therefore, this court vacates that portion of the order requiring Davis to pay restitution for the costs of raising the children after they turn 18 years of age.

¶20        The Dissent states that the Arizona Supreme Court has never adopted foreseeability as a criterion for entitlement to restitution. *Cf. Reed*, 252 Ariz. at 333 ¶ 23 (citing with apparent approval an Oregon case "limiting restitution for victim's attorney fees incurred in the criminal proceedings to those necessary, reasonable, and foreseeable"). This Court, however, has applied that standard for decades. *See, e.g., G.F. v. Nielson*, 258

Ariz 279, 283 ¶ 22 (App. 2024) ("Arizona courts use a 'foreseeability' or 'natural consequence' test to evaluate whether an economic loss was directly caused by the criminal offense.") (citing *Morris*, 173 Ariz. at 17-18). Moreover, the Arizona Supreme Court in *Wilkinson* vacated this Court's opinion rejecting foreseeability in restitution, where two Judges had stated "[i]f restitution extended throughout the foreseeable range of but for causation, the administration of restitution would overwhelm the courts." 198 Ariz. 376, 381 ¶ 23 (App. 2000) (2-1 decision), *vacated*, 202 Ariz. at 31 ¶ 17.

¶21　　　The Dissent states that the cost of raising the children is not recoverable as restitution in criminal court. In doing so, the Dissent cites A.R.S. § 8-539, a portion of A.R.S. Title 8 ("Child Safety") and A.R.S. § 25-320, addressing child support in divorce proceedings, a portion of A.R.S. Title 25 ("Marital and Domestic Relations"). The Dissent, however, does not show how those child safety or child support statutes displace the Criminal Code set forth in A.R.S. Title 13, either generally, or as applicable here. The children were adopted (after Davis killed their mother M.D., resulting in his parental rights being terminated), so A.R.S. § 8-539 does not apply here. Moreover, restitution (setting a sum certain for past, present and future costs resulting from criminal convictions) is not like child support, which is subject to modification by the family court for years and years, consistent with the best interests of the child and if the proper showing is made. A.R.S. § 25-327(A).

¶22　　　The Dissent correctly notes that homicide convictions can yield sentences of varying lengths, suggesting that a different case might merit a different result. But, here, the question is whether, on these facts, the superior court in this case could have imposed the restitution obligations that it ordered. The Dissent forcefully asserts that the prospective cost of raising the murder victim's children is an indirect and consequential loss and, therefore, not recoverable as restitution in criminal court. The Dissent notes that "[i]t is arguably the length of incarceration, not the fact of the crime itself, that affects Davis's ability to provide for the children." The broader point, however, is that Davis' murdering the victim prevented both the murder victim and Defendant from raising the children, although for very different reasons. And Davis is incarcerated because he killed the children's mother.

¶23　　　As the Dissent suggests, a superior court facing a criminal restitution claim for the cost of raising the children of a murder victim might conclude some or even all of the claimed restitution did not pass the *Wilkinson* test. *See Reed*, 252 Ariz. at 330 ¶ 9. But that possibility is different

than concluding, as the Dissent does, that a court could never award criminal restitution for the cost of raising the children of a murder victim. That is particularly true here, where Davis did not assert that the cost of raising the children lacked a reasonable basis in fact, instead admitting that the estimated future costs of raising the children was based on "a sound methodological formula" that was not contested.

¶24         The Dissent argues that this case takes restitution a "step beyond" the future lost wages claim *E.H.* approved. Not so. When a criminal act orphans minor children, the fact that someone else will bear the cost of raising them is "reasonably anticipated to be incurred in the future as a result of the defendant's actions." *Howard*, 168 Ariz. at 460. As the Arizona Supreme Court noted in *E.H.*, citing *Howard*:

> [W]here the criminal conduct directly caused the victim's future medical expenses and future lost wages, [the victim's] murder directly caused [the deceased victim sister's] claimed loss. [The deceased victim's] future ability to earn wages was directly and immediately eliminated with his death, and no other causal events occurred or remained to occur to produce that result. In other words, the loss was direct and immediate.

*E.H.*, 259 Ariz. at 384 ¶ 22. Similarly, in this case, Davis' criminal act directly resulted in both him and the children's mother being unable to care for their children, *i.e.*, their loss, and "no other causal events occurred or remained to occur to produce that result." *Id.*

¶25         On this record, and following the Arizona Supreme Court's directive in *E.H.*, Davis has not shown the superior court erred in denying his PCR petition challenging the restitution award for the cost of raising the children until they turn 18 years of age.

### B.    Estate and Children's Expenses From March to December 2015.

¶26         The superior court awarded $14,179 in restitution, representing: (1) the cost of "the basic necessities of life for the children between March and December 2015" and (2) "incidental costs for settling the victim's estate outside the attorney's fees." Awarding restitution in an amount representing the cost to raise the children is appropriate for the reasons set forth above. Moreover, "customary and reasonable attorney's

fees incurred to close the victim's estate" are properly awarded as restitution. *State v. Spears*, 184 Ariz. 277, 291–92 (1996) (quoting *State v. Baltzell*, 175 Ariz. 437, 438–39 (App. 1992)). For these same reasons, incidental costs in closing the victim's estate properly were awarded as restitution here.

### C.     Probate Attorneys' Fees.

**¶27**         The superior court awarded $40,469.15 in "customary and reasonable attorney's fees incurred to close the victim's estate." As noted above, Arizona allows such amounts to be recovered in restitution and Davis has not shown the fees awarded were not "customary and reasonable." Accordingly, he has shown no error in awarding the probate attorneys' fees as restitution.

### D.     Legal Fees to Seek Legal Custody and Adoption of the Children.

**¶28**         Davis challenges the restitution award of $19,801.56 in legal fees for custody and adoption of the children, arguing those expenses were "expressly precluded as restitution pursuant to A.R.S. § 13-105(16), and applicable caselaw." But Davis has not shown those amounts failed to meet the *Wilkinson* test. As with the future expenses to raise the children, the legal fees properly were awarded as restitution.

## III.    The Superior Court Did Not Err in Not Applying Davis Credit Against the Restitution Award.

**¶29**         Davis argues the court erred in not awarding him credit against the restitution obligation for his one-half community interest in personal property. As noted by the superior court, after deducting the items Davis caused to be stolen after he was arrested, the probate court determined he actually owed money to the estate, meaning he was entitled to no credit. On the record, Davis has shown no error in this conclusion.

## IV.    Davis Was Not Entitled to an Evidentiary Hearing on his PCR Petition.

**¶30**         Davis argues the superior court erred by failing to hold an evidentiary hearing on his PCR petition.

> The relevant inquiry for determining whether the petitioner is entitled to an evidentiary hearing is whether he has alleged facts which, if

> true, would probably have changed the verdict or sentence. . . . '[W]hen there are no material facts in dispute and the only issue is the legal consequence of undisputed material facts, the superior court need not hold an evidentiary hearing.'

*State v. Amaral*, 239 Ariz. 217, 220 ¶¶ 11-12 (2016) (citation omitted). Because Davis challenged the restitution sought on a legal basis, and not material facts, Davis was not entitled to an evidentiary hearing. Accordingly, Davis has not shown the superior court erred by not holding a hearing.

**CONCLUSION**

**¶31** The court grants review and grants relief in part, vacating that portion of superior court's order requiring Davis to pay criminal restitution for the costs of raising the children after they turn 18 years of age, but otherwise denies relief.

**C A T T A N I**, Judge, dissenting in part.

**¶32** I disagree that the prospective "costs of raising children" was properly awarded as restitution in this criminal case.[5] I take no issue with the importance of ensuring that M.D.'s estate and M.D.'s children have a forum for seeking to recover damages caused by Davis's conduct. My disagreement is with using criminal restitution proceedings, rather than civil wrongful death proceedings (at which a defendant has a constitutional right to a jury trial), as the vehicle for doing so.

**¶33** Restitution in a criminal case reimburses the victims' economic loss. *E.H. v. Slayton*, 259 Ariz. 472, 476, ¶ 10 (2025). "'Economic loss' means 'losses that would not have been incurred but for the offense,'" which by statute expressly includes "lost earnings" but expressly excludes

---

[5] I agree with the Majority's analysis vacating the award for costs that may be incurred after the children turn 18. I similarly agree with the Majority's analysis regarding restitution for expenses other than the prospective costs of raising the children.

(among other categories) "consequential damages." *Id.* (quoting A.R.S. § 13-105(16)). "Consequential damages" in this context are losses that do not flow "directly and immediately" from the criminal act, but rather "only from the consequences or results of such act." *Id.* at 478, ¶ 16 (quoting *State v. Reed*, 252 Ariz. 328, 331, ¶ 11 (2022)); *see also State v. Wilkinson*, 202 Ariz. 27, 29, ¶ 7 (2002) (holding that "the statutes direct a court to award restitution for those damages that *flow directly* from the defendant's criminal conduct, *without the intervention of additional causative factors*" (emphasis added)). "If the loss results from the concurrence of some causal event other than the defendant's criminal conduct, the loss is indirect and consequential and cannot qualify for restitution under Arizona's statutes." *Wilkinson*, 202 Ariz. at 29, ¶ 7 (quoted with approval in *E.H.*, 259 Ariz. at 478, ¶ 17). This limitation is important: not only does it conform to our Legislature's statutory directive, but it also endeavors to avoid a conflict with Arizona's constitutionally preserved right to a civil jury trial. *See* Ariz. Const. art. 2, § 23; *E.H.*, 259 Ariz. at 478, ¶ 17; *Wilkinson*, 202 Ariz. at 29–30, ¶¶ 11–13; *Town of Gilbert Prosecutor's Off. v. Downie*, 218 Ariz. 466, 469, ¶ 14 (2008).

¶34 Here, although the murder victim's death resulted in the need for someone else to care for her children, the cost of doing so depends on a variety of additional causative factors, and the determination of that cost is ill-suited for criminal restitution proceedings. At most, under *E.H.*, criminal restitution proceedings may appropriately provide a vehicle to recover lost wages on M.D.'s behalf, although even that assessment would be better determined in civil wrongful death proceedings. What the superior court awarded here as criminal restitution goes far beyond a lost wages claim and is essentially a prospective, non-modifiable child support obligation imposed on someone whose parental rights have been severed. Accordingly, I would vacate that portion of the restitution award.

¶35 Parsing the superior court's restitution award in this case requires a close assessment of which victims and what economic losses are being compensated. Where, as here, the crime results in death, the term "victim" includes not just the decedent herself but also her children, parents, siblings, and others. *See* Ariz. Const. art. 2, § 2.1(C); A.R.S. § 13-4401(19). This means that M.D. is, of course, one victim of the crime, and her own economic losses (like future lost wages, as in *E.H.*) could be recoverable as restitution, although such an award was not sought here. *See E.H.*, 259 Ariz. at 476, 479, ¶¶ 10 & n.3, 22. Maternal grandparents are also crime victims in their own right, and certain categories of restitution were awarded to compensate them for their own economic losses.

¶36        For purposes of the award of restitution for future costs of raising children, the children are the victims claiming economic loss, and the restitution orders award these amounts to maternal grandparents on each child's behalf.  This category of restitution compensates the children for their loss of parental (economic) support.  And when viewed through this lens, the loss at issue really has two components: (1) loss of support from their father, Davis, and (2) loss of support from their mother, M.D.

¶37        The first component (loss of support from Davis) may have been caused by the crime—but *not directly*—and thus does not qualify for criminal restitution at all.  *See id.* at 478, ¶¶ 16–17.  The murder did not erase Davis's legal obligation to support his children.  *See* A.R.S. § 25-501(A), (C).  Not even the later termination of his parental rights did that.  *See* A.R.S. § 8-539 (order terminating parent-child relationship terminates most rights and obligations, "except the right of the child to . . . support from the parent").  Only when maternal grandparents adopted the children did Davis's support obligation end.  *Id.* ("This right of . . . support shall only be terminated by a final order of adoption.").  Because the decision to adopt, while admirable, is what ended Davis's support obligation, this portion of the children's loss is a consequential (rather than a direct) loss and is not awardable as restitution.  *See Wilkinson*, 202 Ariz. at 29, ¶ 7; *E.H.*, 259 Ariz. at 478, ¶ 17; *see also* A.R.S. §§ 13-603(C), -105(16).

¶38        The superior court (and now the Majority) nevertheless conclude that this loss is compensable because it was "foreseeable" that a family member would adopt the children to fill the parental void.  But that is not the test.  To be sure, this court has used the term—although even in the case ostensibly adopting a foreseeability inquiry, the analysis focused on whether the loss was a "natural consequence" of (i.e., resulting directly from) the criminal act.  *See State v. Morris*, 173 Ariz. 14, 18–19 (App. 1992).  But the Arizona Supreme Court has never adopted foreseeability of a loss as a criterion (much less as a sufficient condition) for entitlement to restitution.  The court has instead uniformly focused on the causal chain: whether the loss is a direct and immediate result of the criminal conduct and only arises without the concurrence of an additional causal factor.  *See, e.g.*, *Wilkinson*, 202 Ariz. at 29, ¶ 7; *E.H.*, 259 Ariz. at 478–79, ¶¶ 16–17, 22; *Reed*, 252 Ariz. at 330–32, 335, ¶¶ 9–11, 17, 30.  Even though the additional cause (here, adoption) may have been foreseeable, it remains an additional link in the causal chain leading to the children's loss of support from Davis.

¶39       Moreover, even without an adoption, the loss attributable to Davis's obligation to support his children is indirect.  It is arguably the length of incarceration, not the fact of the crime itself, that affects Davis's ability to provide for the children (although even this depends on factors other than the criminal conduct, e.g., whether Davis had sufficient non-income assets to provide support).  And the length of imprisonment for a homicide depends on myriad factors including but not limited to the criminal conduct.

¶40       Homicide offenses can result in a wide range of sentences, from a short term in prison (e.g., one year in prison as a mitigated term for a first-time offender who commits negligent homicide), *see* A.R.S. §§ 13-1102(C), -702(D)) to a much longer term (e.g., the 25-year flat-time maximum sentence for second-degree murder imposed in this case, *see* A.R.S. §§ 13-1104(C), -710(A)) or even natural life imprisonment or death, *see* A.R.S. §§ 13-1105(D), -751(A).  But whatever the sentence imposed, it is generally the fact of incarceration, rather than the crime, that results in a loss of support from the criminal defendant.

¶41       Furthermore, the amount a parent is obligated to *prospectively* support a child is difficult to determine, and in fact depends on a variety of yet-to-be determined factors, making it a consequential, rather than a direct, damage determination.  In other contexts, courts would never order a fixed, prospective child support award for various reasons, including the consequential nature of such an award.  As illustrated by Arizona's Child Support Guidelines, A.R.S. § 25-320 app., the amount required to support a child turns on a multitude of factors.  And that amount is not set in stone: as family circumstances change, including when a parent loses a job or suffers some other setback, the financial means available to raise children may also change.  For that reason, child support awards (in the domestic relations context) are *always* modifiable upon a showing of a substantial and continuing change in circumstances.  A.R.S. §§ 25-327(A), -317(F); *see also* Guidelines Section XIV.  This case, of course, arises instead in the criminal restitution context.  But even here, the confluence of factors that determine what will be required prospectively to raise children and the inability to meaningfully predict that future need (without provision for modification regardless of how circumstances change) renders the loss of support unsuitable to be categorized as a direct cost payable as criminal restitution. In sum, the children's loss of a specific level of economic support from Davis was not *directly* caused by the murder, so in my view, the portion of the award of restitution for child-rearing costs tied to this loss was improper.

¶42        The children's loss of economic support from M.D., in contrast, was plausibly caused directly by Davis's criminal conduct to the extent it affected M.D.'s future ability to earn wages that could be used to support the children. *See E.H.*, 259 Ariz. at 479, ¶ 22. This facet of the restitution award, however, even though recoverable as such, highlights the complexities and potential pitfalls of expanding the concept of criminal restitution beyond what it has historically been used for (easily determinable, already incurred costs), particularly if it strays beyond an award of lost wages.

¶43        The Majority relies in large part on *E.H.* and *State v. Howard*, 168 Ariz. 458 (App. 1991), to support a restitution award compensating for future economic losses. *See supra* ¶¶ 14, 18. In *E.H.*, the Arizona Supreme Court embraced—conceptually—the notion that future lost wages for a 6-year-old murder victim could be awarded as criminal restitution. *See* 259 Ariz. at 477, 479, ¶¶ 14, 22. But the court did not approve a specific award and instead remanded the case for the superior court to determine whether the victim could establish a "reasonable basis for estimating the incurred loss," expressly warning that "[c]onjecture and speculation alone cannot form that basis." *Id.* at 480, ¶ 27.

¶44        In *Howard*, this court upheld a restitution award that included $17,500 in anticipated future medical expenses and $12,000 in future lost wages tied to an offense that left the victim with serious injuries. 168 Ariz. at 459–60. We affirmed the relatively modest award based on uncontested evidence supporting the victim's projected (ongoing at the time of sentencing) expenses. *Id.* We further noted the express caveat that the amount would be reduced if the medical costs were less than anticipated or the victim was able to return to work sooner than anticipated. *Id.* at 460

¶45        The further we stray from *Howard*'s readily determinable near-future expenses, the closer we come to the "[c]onjecture and speculation" disapproved by the *E.H.* court. This case in fact takes restitution a step beyond a potential future lost wages claim contemplated by the *E.H.* court and into the realm of, as noted above, what is essentially a fixed, prospective child support award.

¶46        Furthermore, the narrow focus of restitution proceedings risks inconsistent or overlapping awards when prospective costs are awarded to someone other than a representative of the murder victim's estate. The *E.H.* court authorized a statutory victim to pursue a lost wages claim on the deceased victim's behalf, but the defendants there did not challenge (and thus the court did not address) the practicalities of a single

statutory victim claiming restitution payable to the decedent's estate. *See* 259 Ariz. at 476, ¶ 10 & n.3. *E.H.* left unanswered how to ensure that any such lost-wages award is distributed to all of the individuals entitled to inherit from the deceased victim. Statutory victims may include relatives beyond those who would qualify as statutory beneficiaries for a wrongful death claim and may exclude the deceased victim's personal representative or estate. *Compare* A.R.S. § 13-4401(19), *with* A.R.S. § 12-612(A). This may lead to a restitution award that is irreconcilable with, for example, a deceased victim's Will leaving their estate to someone other than a statutory victim. And in any case, criminal restitution payable to the deceased victim's estate would need a mechanism to guarantee distribution to the decedent's heirs, as opposed to one statutory victim.

¶47 The award here presents an additional concern. Although the restitution award is to maternal grandparents "as victim representatives" for each of the minor children, there is no provision that the money be held in trust, with the concomitant fiduciary responsibilities that ensue. There is likewise no provision specifying what will happen if maternal grandparents die before the children reach age 18. This leaves no legal assurance that the money will be spent on the children or that the money will be distributed to the children upon maternal grandparents' deaths. From my perspective, if the award is intended to be for the costs of raising the children, it should be designated as such, and anyone handling such monies should do so in a fiduciary capacity.

¶48 In sum, the award of restitution for the future costs of raising the children is over inclusive, sweeping in loss of economic support from Davis that may be caused by but not *directly* by the murder. And even to the extent the children's loss of economic support from M.D. may technically be compensable as restitution, calculation of any such award is a fact-intensive, multi-factor inquiry ill-suited to a criminal restitution proceeding. Affirming the amount awarded by the superior court here goes far beyond what Arizona appellate courts have historically authorized to cover discrete, readily-determinable expenses. The award stretches restitution well beyond even the uncertainties of the potential future lost-wages award contemplated by the *E.H.* court, and fails to take into account other potential beneficiaries of M.D.'s estate.

¶49 As noted above, pursuing compensation from a defendant convicted of murder to help offset the future cost of raising the murder victim's children is a legitimate, worthwhile endeavor. In my view, however, it should be done in a civil wrongful death proceeding in which a defendant has a right to a jury trial, and in which there are protections in

place to ensure that any recovered funds are held by someone with fiduciary responsibilities to all of the murder victim's beneficiaries and who is responsible for ensuring that monies awarded for the benefit of a minor child are held in trust for that child. I would thus vacate the superior court's ruling awarding future child-raising costs as criminal restitution.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:         JR